23 December 1999

No. 2--98--1162

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) No. 97--CF--3159

)

)

DWAYNE WILSON, ) Honorable

) John T. Phillips,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Dwayne Wilson, appeals the trial court's denial of his motion to dismiss based upon grounds of double jeopardy.  The defendant had been charged, along with two codefendants, with home invasion and with four counts of armed robbery.  The defendant claims that the State's actions during his first trial forced him to request a mistrial and that the State's actions amounted to overreaching, which barred his retrial.  The trial court denied defendant's motion, finding that the State had done nothing to provoke a mistrial.  Defendant now timely appeals pursuant to Supreme Court Rule 604(f) (145 Ill. 2d R. 604(f)).

The charges against defendant arose from an incident occurring on November 22, 1997.  On that date, three armed men entered the home of Stephanie Brown around 1 a.m. and robbed Jamaul Brown, Phillip Conver, and Lashun Price.  Defendant and two codefendants, Scott Johnson and Glen Johnson, were charged in connection with the incident.  During the grand jury proceedings against the three men, Officer Lawrence Wade testified that he had investigated the November 22, 1997, home invasion.  Wade had interviewed Stephanie Brown, who had identified defendant and his codefendants as the three perpetrators.  Wade's police report indicated that Stephanie told him that Glen and Scott Johnson had entered her home along with "Wayne Bang," a/k/a defendant, Dwayne Wilson.  Officer Wade's report indicated that Stephanie had picked defendant's picture out of a photo lineup and that defendant's picture was in position No.  five.  Officer Wade later filed a supplemental police report, correcting his prior report, to show that defendant's picture was in position No. six and that Stephanie had picked No. six as defendant's picture.

Codefendant Glen Johnson entered into a fully negotiated guilty plea on April 20, 1998, and was sentenced to 14 years' imprisonment.  The record does not indicate whether Scott Johnson was tried or entered into a plea agreement.  Defendant's claims of prosecutorial overreaching at his trial concerned the testimony of four witnesses, Phillip Conver, Jamaul Brown, Lashun Price, and codefendant Glen Johnson.  Specifically, defendant contends that the State wanted to induce codefendant Glen Johnson to testify against defendant.  Due to delays in transporting Johnson from the Department of Corrections to the Lake County jail, however, the State could not make a deal with Johnson prior to defendant's trial and needed more time to negotiate with Johnson.  Defendant alleges that, because the State needed more time, it informed defendant immediately prior to trial that Conver, Brown, and Price could identify defendant as one of the perpetrators, even though the State knew that this was not true, in order to provoke defendant into requesting a mistrial.

The facts relevant to defendant's appeal are as follows.  Prior to a May 21, 1997, status hearing in defendant's case, Assistant State's Attorney O'Keefe and defense counsel were in the hall outside the courtroom with Stephanie Wilson.  Because of the confusion in Officer Wade's report regarding Stephanie's identification of defendant from the photo lineup, O'Keefe and defense counsel showed her the photo lineup again.  Stephanie identified defendant's picture.  Jamaul Brown was in the area when Stephanie was shown the photo lineup.  After defense counsel had left the area, Jamaul looked at the lineup, pointed to defendant's picture, and said to O'Keefe, "[I]s that Dwayne Wilson?"  O'Keefe answered yes.  

At the end of the day on June 5, 1998, the State notified defense counsel that Phillip Conver had identified defendant from a photographic lineup that morning.  In addition, on June 8 or 9, 1998, O'Keefe told defense counsel about his exchange with Jamaul Brown outside the courtroom on May 21, 1997, because he wanted to make defense counsel aware of the exchange.  At a court appearance on June 8, 1998, defense counsel informed the trial court that the State had told him just three days earlier that Conver could identify defendant.  The trial court said that it would consider giving defense counsel additional time to prepare his case.  Defense counsel stated that he thought he could "go beyond that because I don't believe that the witness actually made that particular statement."

Assistant State's Attorney Morrison explained to the court that Conver had previously been tendered to defense counsel as a witness and that defense counsel had been given reports of a statement made by Conver referring to "Wayne" as one of the perpetrators.  Morrison also indicated that the State had taken Conver's statement at such a late date and had obtained an identification from Conver in response to information that defense counsel had given the State.  Specifically, defense counsel told the State that he had spoken with Conver and said that Conver denied that the third person in Stephanie Brown's home was defendant.  Accordingly, the State showed Conver some photographs and advised defense counsel of Conver's identification as soon as it was obtained.  Defense counsel again stated that he did not need more time to prepare for trial, and the trial date was set for June 10, 1998.

After the jury was picked but prior to the start of defendant's trial on June 10, 1998, defense counsel informed the trial court that two additional witnesses had been disclosed that morning as potential eyewitnesses, namely, Lashun Price and Jamaul Brown.  Defense counsel then sought to renew a previously filed motion to quash and suppress identification as to Price and Brown on the ground that their identification was tainted.  

In response to defense counsel's motion, Assistant State's Attorney O'Keefe stated that Lashun Price could be put aside because Price could not identify defendant.  With regard to Jamaul Brown, O'Keefe explained that he had notified defense counsel of his conversation with Jamaul outside the courtroom at the May 21, 1997, status hearing.  Assistant State's Attorney Morrison informed the court that the State would not seek an out-of-court identification from Jamaul but instead would ask Jamaul only to identify defendant in court.  O'Keefe explained that Jamaul had not identified defendant because, at the time of the incident, Jamaul had not been shown a photo lineup and had not been asked to make an identification.  The trial court ruled that Jamaul could not testify that day and that he should be made available for defense counsel to interview at the end of the day, and it set defendant's motion to quash for hearing the next afternoon.  Defendant's trial then commenced.

As part of its case in chief, the State called Phillip Conver as a witness.  Conver testified that he was 16 years old and that Stephanie Brown and Jamaul Brown were his cousins.  Conver said that on November 22, 1997, he was at his cousins' house with Stephanie, Jamaul, Lashun Price, and Jamaul's four-year-old brother, Oris.  Around 1 a.m., Conver heard a knock on the back door and went to answer it.  Conver looked through the peephole and saw Glen Johnson, whom Conver had seen before.  Conver unlocked the door, and Scott Johnson entered the room with a shotgun in his hand.  Scott made everyone get on the ground.  Conver did not see anyone else at that time, but he knew that Glen was with Scott because he had seen Glen at the door.  Conver said that, after he was on the ground, someone else came into the apartment, but he could not see the person.  He knew the person was a male because the person spoke to him, but Conver did not recognize the person's voice.

The State then asked for leave to treat Conver as a hostile witness, stating that his testimony was a complete surprise.  Morrison explained that, in two different statements given to the State's investigators, Conver had identified defendant as the third person and had stated that he could see defendant.  Assistant State's Attorney O'Keefe also stated that Conver's father was in court and was looking at Conver, exerting some form of pressure.  The trial court denied the State's request.  

Conver then testified that he remembered speaking with Dennis Pensala, an investigator from the State's Attorney's office, on March 5, 1998.  Conver denied that in his interview with Pensala he had referred to the third perpetrator as a person named "Wayne Bang."  Conver denied that he had ever met a person named Dwayne Wilson.  Conver said that he had met the person referred to as Wayne but denied that Wayne was in the courtroom. 

Conver testified that he again met with Pensala on June 5, 1998.  Conver claimed that he was shown a photographic lineup and that Pensala or someone with him said "doesn't this person right here look like Wayne?"  Conver said that he answered yes even though he had never seen the person.  Conver denied that he had pointed to defendant's picture on his own.  Conver denied telling Pensala that the person in the picture was known to him as Wayne Bang, denied telling Pensala that he had known Wayne Bang for at least five years, and denied telling Pensala that Wayne Bang had a ponytail at the time of the incident.

The next day, the trial court held a hearing on defendant's motion to quash Jamaul Brown's identification of defendant.  At the hearing, Jamaul Brown testified that he was 13 years old.  On November 22, 1997, Jamaul was at his mother's apartment with his sister Stephanie, his brother Oris, and his cousins Lashun and Phillip.  Jamaul was sleeping in his mother's room.  He awoke and saw a man with a shotgun walking back and forth.  Jamaul went into the living room and saw two other men in addition to the man with the shotgun.  Jamaul said that when he went to the police station later, he told the detective that the name of one of the robbers was Wayne Wilson.  Jamaul thought that the detective showed him a photo lineup and asked where Wayne's picture was in the lineup.  Jamaul said that he picked out defendant's picture.  Jamaul then identified defendant as the person in the picture.  Jamaul said that he knew defendant by the name Wayne Bang.  

Jamaul also testified that, approximately two weeks prior to defendant's trial, he had seen Stephanie at court talking with defense counsel and with O'Keefe.  Defense counsel and O'Keefe showed Stephanie a photo array containing six pictures.  Jamaul said that he did not recall having a conversation with O'Keefe concerning the photo array, although he did testify that, after defense counsel and O'Keefe showed Stephanie the photo lineup, he asked O'Keefe if Stephanie had pointed to the right photo.  Jamaul said he glanced at the pictures while the attorneys were showing them to Stephanie.  Jamaul claimed that he had first seen the pictures around a month earlier when an assistant State's Attorney (who had since moved to Washington, D.C.) showed them to him and told him to point out Dwayne.

Following Jamaul's testimony, defense counsel argued that he had never received discovery concerning Jamaul's identification of defendant at the police station or Jamaul's identification of defendant to the assistant State's Attorney.  Defense counsel then requested a mistrial.  Assistant State's Attorney Morrison responded that neither he nor O'Keefe knew about the out-of-court identifications to which Jamaul had testified.  Morrison said that the State would not seek to use the out-of-court identifications, because it had not known about them and therefore had not tendered them to the defense.  The trial court then stated that it did not see how it could "do anything but declare a mistrial at this point because [Jamaul's out-of-court identification] has not been disclosed."  The trial court further ruled that, in the interest of justice, it would grant a mistrial on the defendant's motion.

Defendant claims that the State informed him that Conver, Price, and Jamaul would make an identification of him so that defendant would move for a mistrial, thereby allowing the State additional time to negotiate an agreement with codefendant Glen Johnson to testify against him.  On May 14, 1998, the State had filed a petition seeking a writ to have Johnson transported from the Department of Corrections to the Lake County courthouse on May 22, 1998.  Although a writ was signed by a judge on May 14, 1998, problems were encountered in having Johnson brought to Lake County.  Another writ was issued on June 3, 1998, and Johnson was brought to the Lake County jail on June 8, 1998.

At a hearing on June 8, 1998, defense counsel noted that judgment had been entered on Glen Johnson's guilty plea and that Johnson had been sentenced to 14 years' imprisonment.  Defense counsel questioned whether the State could vacate Johnson's sentence at that point.  Mr. Morrison responded that there had been preliminary discussions with Johnson's attorney concerning a recommendation from the State that Johnson's sentence be reduced in exchange for his truthful testimony.  Following a break in the proceedings, Johnson's attorney appeared and indicated that he had not had an opportunity to discuss the matter with Johnson but would speak with him that day.

On June 10, 1998, at the start of defendant's trial, defense counsel objected to any testimony by Johnson, stating that the State's negotiations with Johnson had not been disclosed to him because the negotiations were "still in the works."  Defense counsel also stated that he did not believe there could be an agreement with Johnson because he already had been sentenced, but he conceded that he had no standing to object or to question the agreement because Johnson was represented by counsel.  Assistant State's Attorney Morrison said that the State intended to call Johnson to testify regardless of whether it had an agreement with him.  Defense counsel then objected that the State was calling Johnson to impugn defendant's reputation by linking him with Johnson and not with the offense.  The trial court ruled that Johnson could not testify in the case until defense counsel had an opportunity to interview him and observed that, if the State called Johnson to testify and could not link him with the offense, the State risked a mistrial.  The State then indicated that if there were questions concerning Johnson's testimony it would make an offer of proof in order to avoid a mistrial.  Thereafter, on June 15, 1998, the trial judge that had previously sentenced Johnson vacated Johnson's 14-year sentence and resentenced him to 11 years' imprisonment, in exchange for his truthful testimony in the case against defendant.

Following the declaration of a mistrial in the first trial of defendant, defendant's case was again set for trial.  On August 21, 1998, defendant filed a motion to dismiss the indictment against him on the ground that the State had provoked the mistrial against him and, therefore, that a second trial was barred by double jeopardy.  At the hearing on defendant's motion, Officer Morris Wade testified that he had not shown Jamaul a photo lineup.  Wade also said that there was no indication in his report that Jamaul had identified defendant as one of the offenders, that Jamaul knew defendant, or that Jamaul had identified one of the offenders as Wayne Bang.  The trial court then recalled its own reactions during Jamaul's testimony at the hearing on defendant's motion to suppress "to watching the mouths of both prosecutors drop open when Mr. Jamoul [
sic
] indicated -- when Jamoul indicated on the stand that he had seen these [photo lineups] and he had identified Wayne Bang at that time.  I make no finding whether or not that was feigned surprise or not.  But it certainly was surprise to the defense.  It was clear that had never been said to anybody before."  

The trial court then noted that, with respect to Glen Johnson, "Mr. Johnson was clearly disclosed in this case by the State's disclosure on May 21, 1997.  * * * So the defense knew he was going to be a witness.  They didn't know what he was going to say.  I don't think the State really knew what he was going to say because they were unable to speak with him."  The trial court then ruled that the State did nothing to provoke a mistrial with regard to Johnson's testimony nor with regard to the testimony of Jamaul.  The trial court concluded that "there was no conduct undertaken by the State to harass or prejudice the defendant, nor to provoke a mistrial so as to give the State a more favorable position at the time of a second trial.  And there was not an attempt by the State to goad the defendant into moving for a mistrial or to provoke a mistrial."  The trial court therefore denied defendant's motion to dismiss.

On appeal, defendant first contends that the proper standard of review is whether the trial court's ruling denying his motion to dismiss the indictment was correct as a matter of law.  In response, the State counters that the proper standard of review is that the trial court's ruling should not be disturbed absent an abuse of discretion.

In determining the proper standard of review, we note that, in order to reverse the trial court's denial of defendant's motion to dismiss, this court thereby would have to reverse the trial court's finding that the State did not intend to provoke a mistrial.  Such a determination would require us to find that the trial court abused its discretion.  See 
People v. Franklin
, 159 Ill. App. 3d 56, 61 (1987) (in appeal challenging denial of motion to dismiss based upon double jeopardy, appellate court would have to determine that trial court abused its discretion in order to reverse finding that prosecutor did not intend to provoke a mistrial).  Accordingly, we agree with the State that the proper standard of review in this case is whether the trial court abused its discretion in denying defendant's motion to dismiss based upon its finding that the State did not intend to provoke a mistrial.

Defendant then argues that the trial court's ruling must be reversed because the State was guilty of overreaching when it provoked defendant into moving for a mistrial.  As noted, defendant claims that the State informed him that additional witnesses would identify defendant as the third robber, even though the State knew that the witnesses had not and could not make such an identification.  Defendant also alleges that the State's overreaching is evident in its dealings with Glen Johnson because the State had no authority to offer Johnson a sentence reduction, nor was Johnson entitled to a sentence reduction.  Defendant asks this court to find that the State overreached in this case in order to obtain more time to make a deal in exchange for Glen Johnson's testimony.

In response, the State notes that the witnesses at issue had all been disclosed to defendant and also notes that the State repeatedly stated that it would call Johnson to testify whether or not it had reached an agreement with him.  Accordingly, the State contends that there was no evidence that it intended to provoke a mistrial.  The State also argues that defendant lacks standing to raise any objections to the State's agreement with Johnson.

As a preliminary matter, we note that we agree with the State that defendant lacks standing to object to the agreement with Johnson.  The instant situation is analogous to cases where a defendant objects to the admission of evidence based upon alleged violations of another person's constitutional rights.  For example, the supreme court has held that a defendant does not have standing to object that the statements of his codefendant were the fruit of an unlawful arrest, even where the defendant confessed after being confronted by his codefendant's illegally obtained statement.  
People v. James
, 118 Ill. 2d 214 (1987).  Likewise, courts have held that a defendant does not have standing to contest statements made by witnesses in his case.  See 
People v. Govea
, 299 Ill. App. 3d 76 (1998)(defendant lacked standing to object that witness's statement was obtained by coercion in violation of fourteenth amendment); 
People v. Barton
, 286 Ill. App. 3d 954 (1997)(defendant lacked standing to object to voluntariness of statements made by two witnesses).  We believe the instant case is analogous to the foregoing and find that defendant lacks standing to object to Johnson's sentence or to the agreement to reduce his sentence.  In so holding, we observe that, during defendant's first trial, defense counsel himself conceded that he had no standing to object to the State's agreement with Johnson.

We next address defendant's claim that the trial court erred in denying his motion to dismiss based upon double jeopardy.  The doctrine of double jeopardy bars the reprosecution of an individual that has been acquitted of a criminal offense.  
People v. Ortiz
, 151 Ill. 2d 1, 9 (1992).  In a jury trial, jeopardy attaches when the jury is sworn.  
People v. Parker
, 202 Ill. App. 3d 454, 462 (1990).  However, the conclusion that jeopardy has attached in a case begins, rather than ends, an inquiry into whether retrial is barred by double jeopardy.  
Ortiz
, 151 Ill. 2d at 10.

A defendant's motion for a mistrial generally eliminates the application of double jeopardy principles and allows the State to retry a defendant even if the basis for the mistrial can be attributed to the State.  
People v. Gustafson
, 194 Ill. App. 3d 910, 916 (1990).  If, however, the circumstances giving rise to the defendant's motion for a mistrial are attributable to prosecutorial or judicial overreaching or bad-faith conduct and not to simple error, the retrial of the defendant is barred.  
People v. Parker
, 202 Ill. App. 3d 454, 463 (1990).  Prosecutorial overreaching is prosecutorial misconduct designed to provoke or cause a mistrial in order to obtain a second, more favorable, opportunity to convict the defendant or conduct motivated by bad faith or to harass or prejudice the accused.  
People v. Brown
, 222 Ill. App. 3d 703, 711 (1991).

Defendant alleges that the prosecutors' actions in informing defendant immediately before trial that Conver, Lashun Price, and Jamaul Brown could identify him as the third robber were designed to provoke him into moving for a mistrial.  As evidence of the prosecutors' intent, defendant claims that Conver's trial testimony denying that he had ever seen the third robber or that he had ever seen defendant establishes that "Conver's June 5 identification of defendant was not an identification at all but a deceitful and manipulative attempt by the State to obtain an incriminating statement against defendant."  Defendant also argues that Jamaul's revelation to prosecutors on the morning of trial that he could identify defendant was suspect and should have prompted prosecutors to thoroughly question Jamaul.  Therefore, defendant contends that the prosecutors' assertions that they did not know how Jamaul would testify are suspect.  Defendant maintains that the State's actions further are suspect because the State had a motive to delay the trial in order to secure the testimony of Glen Johnson.

Upon review, we find no evidence in the record that the trial court abused its discretion when it found that there was no prosecutorial overreaching.  It is clear from the record that the State was surprised by Conver's testimony at the trial that he had not seen the third robber.  In fact, the prosecutors requested that Conver be declared a hostile witness at that point in his testimony and later noted that Conver's father was looking at him, possibly exerting pressure on him, while he testified.  In the State's two prior interviews with Conver, Conver had identified defendant as the third perpetrator.  The State explained that it showed Conver a photo lineup three days before trial in which he identified defendant in response to defense counsel's claim that Conver could not identify defendant.  Under the circumstances, we cannot say that the State intended to provoke or cause a mistrial with regard to Conver's identification, nor was the State motivated by bad faith.

Similarly, we find no impropriety on the part of the State with regard to Jamaul Brown's testimony.  The State had identified Jamaul as an identification witness based upon Jamaul's conversation with Assistant State's Attorney O'Keefe outside the courtroom on May 21, 1997, not based upon the identifications to which Jamaul had testified on the stand.  The State claimed that it was not aware of those identifications.  We will defer to the trial court's finding that Jamaul's testimony during the hearing on defendant's motion to suppress was a surprise to the State, as the trial court was in the best position to observe the parties and to judge the credibility of the witnesses.  
People v. Smeathers
, 297 Ill. App. 3d 711, 717 (1998).  

There also is no merit to defendant's claim of prosecutorial overreaching with regard to Lashun Price.  Defendant contends that the State identified Price as an identification witness on the day of trial in order to provoke him into moving for a mistrial.  We find no impropriety, however, as the State promptly clarified that Price could not identify defendant and would not be called as an identification witness.

We further find that the trial court did not abuse its discretion in finding that there was no prosecutorial overreaching with regard to the testimony of Glen Johnson.  Glen Johnson was disclosed to defendant as a witness well before trial.  Additionally, the State at all times indicated that it intended to call Johnson as a witness regardless of whether it had reached an agreement with him.  Further, when defendant objected that, absent an agreement, the State would be using Johnson's testimony only to connect him to defendant, the State indicated that it was willing to make an offer of proof concerning his testimony in order to avoid a mistrial.  These actions belie defendant's claim that the State was attempting to provoke a mistrial.  Consequently, we find no evidence in the record of prosecutorial overreaching that would bar defendant's retrial.  The trial court, therefore, did not abuse its discretion in denying defendant's motion to dismiss based upon double jeopardy.

For all the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., concur.