THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCO A. CAMPOS, Defendant-Appellant.

Second District    No. 2—03—0032

Opinion filed June 1, 2004.—Rehearing denied July 20, 2004.

Robert G. Black, of Law Offices of Robert G. Black, of Naperville, and Anthony J. Conniff, of Glen Ellyn, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Stephen E. Norris and

Patrick D. Daly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a mistrial on charges of criminal sexual assault (720 ILCS 5/12—13(a)(1) (West 1996)), criminal sexual abuse (720 ILCS 5/12—15(a)(1) (West 1996)), and battery (720 ILCS 5/12—3(a)(2) (West 1996)), defendant, Marco A. Campos, filed a "Motion to Discharge and Acquit Defendant on Plea of Double Jeopardy." The trial court denied defendant's motion, and defendant filed a timely notice of appeal pursuant to Supreme Court Rule 604(f) (188 Ill. 2d R. 604(f)). On appeal, defendant argues that the State should be barred from retrying him because the prosecutor intentionally provoked a mistrial. We affirm.

Defendant was charged with committing five assaults against four different women. Four of the five assaults allegedly occurred at defendant's place of employment, the Chateau Village Center, which is a nursing home in Willowbrook. The fifth incident was alleged to have taken place in an apartment in Darien. Defendant's trial commenced on August 26, 2002. We dispense with a summary of the testimony at trial, as it is not necessary for resolution of the issue before us. We will refer to relevant evidence as our analysis warrants.

Defendant's claim of error is based on the prosecutor's examination of Willowbrook police commander Mark Shelton. Shelton testified that, on May 11, 1998, he went to the Chateau Village Center to speak with facility administrator Nancy Hartmann as part of his investigation of several complaints against defendant. Shelton testified that he also spoke to defendant on that date. Defense counsel then requested a sidebar and informed the court that defendant had asked to speak to a lawyer during his conversation with Shelton. Defense counsel stated, "If that comes out, it will vitiate the jury and cause a mistrial." The following colloquy then occurred:

"MR. KNIGHT [Assistant State's Attorney]: I'm certainly not going to ask him that.

MR. CONNIFF [Defense counsel]: Then where are we going with this?

THE COURT: I don't think you want to try the case again. So make sure, you know—

MR. KNIGHT: I know, I understand the law, judge."

Assistant State's Attorney Knight then asked Shelton what he asked defendant regarding the incidents under investigation and what, if anything, defendant said in response. Defendant objected and the court overruled the objection. Assistant State's Attorney Knight then

asked Shelton to relate what he told defendant and what defendant said to him about the incidents. Shelton testified as follows:

"A. I told him that some ladies had come forward to the police department about some incidents involving improper contact involving him.

Q. What did he say?

A. He said he had done nothing to anyone. And at that time, he said he needed to speak with an attorney."

Defense counsel then objected and moved for a mistrial. Assistant State's Attorney Knight advised the court that, when he went over Shelton's testimony with him, Shelton indicated that he was going to testify that defendant said he did not do anything to anybody. Assistant State's Attorney Knight further said that he told Shelton, "[T]hat's all we're going to talk about." The court then declared a mistrial.

Subsequently, defendant moved for an acquittal or a discharge of the complaints against him on double jeopardy grounds. The State responded with affidavits that mirrored Assistant State's Attorney Knight's earlier statement to the court that he had intended to limit Shelton to testifying that defendant said he did not do anything to anyone. However, Assistant State's Attorney Knight admitted that he did not specifically instruct Shelton not to mention defendant's request for an attorney. The court denied defendant's motion, finding that there was no reason why the State would have wanted a mistrial and that the prosecutor did not act in bad faith in failing to tell Shelton not to mention defendant's request for an attorney. Defendant's appeal ensued.

■ The parties disagree regarding which standard of review should apply to our review of the merits of the court's denial of defendant's motion. Defendant argues for a *de novo* standard of review because of the need for uniformity and because neither the credibility of the witnesses nor the facts are at issue. The State contends that we should reverse the trial court's decision only if an abuse of discretion occurred because the ruling was based on a factual determination, namely, whether the prosecutor goaded defendant into moving for a mistrial. We agree with the State.

There is case law that states, generally, that review is *de novo* when a constitutional right is at stake. *People v. Leeper*, 317 Ill. App. 3d 475, 480 (2000). However, this is not always the case. Recently, when reviewing a trial court's decision to disqualify a defendant's chosen counsel on conflict of interest grounds, our supreme court declined to review *de novo* the trial court's ultimate "assessment" of the facts. *People v. Ortega*, 209 Ill. 2d 354 (2004). Instead, because

trial courts need to have discretion when deciding whether to allow a defendant to waive counsel's actual or potential conflict of interest, the court held that it was required to give deference not only to the trial court's factual findings, but also to the weight the trial court gave to the facts. *Ortega*, 209 Ill. 2d at 358-60. Consequently, the court considered whether the trial court abused its discretion in disqualifying defendant's counsel. *Ortega*, 209 Ill. 2d at 359.

Similarly, when a defendant has filed a motion to dismiss on double jeopardy grounds, arguing that the prosecutor goaded him into moving for a mistrial, reviewing courts have declined to reverse the trial court's ruling on the motion absent an abuse of discretion. This court has held that the proper standard of review in a case such as the one before us is "whether the trial court abused its discretion in denying defendant's motion to dismiss based upon its finding that the State did not intend to provoke a mistrial." *People v. Wilson*, 309 Ill. App. 3d 235, 242 (1999).

Citing *People v. Walker*, 308 Ill. App. 3d 435 (1999), defendant contends that the authority from this court is inconsistent as to which standard of review is proper. We disagree. In *Walker*, the issue was whether statements made by a police detective should be imputed to the State in order to establish prosecutorial overreaching. We held that this was a question of law, subject to *de novo* review. *Walker*, 308 Ill. App. 3d at 438. Unlike in *Walker*, the issue in this case is the intent of the prosecutor himself, which is a factual question that the trial court is in the best position to determine. See *Ortega*, 209 Ill. 2d at 363 ("[T]he trial court is in a better position than a reviewing court to judge the motives and intentions of the prosecutors"). Consequently, *Walker* is distinguishable.

Defendant also contends that *de novo* review is appropriate because neither the credibility of witnesses nor specific facts are at issue. This argument is not persuasive, because the question of prosecutorial intent involves assessing the credibility of the prosecutor's representations to the trial court, an assessment that the trial court is in the best position to make. The outcome of defendant's motion to discharge rested solely on the trial court's finding with respect to intent. Accordingly, we will not overturn the court's factual findings unless they are against the manifest weight of the evidence, and we will not reverse the trial court's decision on the merits of the motion to discharge absent an abuse of discretion. An abuse of discretion occurs when the trial court's decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *Ortega*, 209 Ill. 2d at 359.

Defendant further contends that we should not defer to the

trial court's discretion because the court applied an incorrect standard when deciding his motion and did not address the prosecutor's intent. Whether the trial court applied the proper legal standard is a question of law, which is subject to *de novo* review. *Walker*, 308 Ill. App. 3d at 438. Accordingly, we review *de novo* whether the trial court properly applied the law. However, we give deference to the court's factual findings and to its ultimate decision based on those findings. For the following reasons, we conclude that the court did use the wrong standard, but the denial of defendant's motion was appropriate nonetheless.

■ The double jeopardy clauses of the United States Constitution and the Illinois Constitution (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10) protect a criminal defendant from repeated prosecutions for the same offense. When the defendant, rather than the State, moves for a mistrial, the defendant is deemed to have deliberately chosen "to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *People v. Nelson*, 193 Ill. 2d 216, 220-21 (2000). In such a case, the double jeopardy clause does not bar retrial, unless "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676, 72 L. Ed. 2d 416, 425, 102 S. Ct. 2083, 2089 (1982). This is a "narrow exception" that the Supreme Court adopted after rejecting a more general standard based on a prosecutor's bad-faith conduct or harassment of the defendant. *Kennedy*, 456 U.S. at 673-75, 72 L. Ed. 2d at 423-24, 102 S. Ct. at 2088-89; see also *Nelson*, 193 Ill. 2d at 221.

■ In the case at bar, the trial court determined whether the prosecutor acted in bad faith rather than whether he intended to provoke defendant into moving for a mistrial. It appears that the court was relying on one of this court's opinions, which held that prosecutorial misconduct occurs when the prosecutor acts to cause or provoke a mistrial in order to obtain another opportunity to convict the defendant, or when the prosecutor's conduct is " 'motivated by bad faith to harass or prejudice the accused.' " *Walker*, 308 Ill. App. 3d at 439, quoting *People v. Brown*, 222 Ill. App. 3d 703, 711 (1991). However, as the parties point out, both the United States Supreme Court and the Illinois Supreme Court have rejected the general "bad faith" and "harassment" standards. *Kennedy*, 456 U.S. at 676, 72 L. Ed. 2d at 425, 102 S. Ct. at 2089; *Nelson*, 193 Ill. 2d at 221. Thus, the trial court erred when it considered whether the prosecutor acted in bad faith when questioning Commander Shelton. We hold, however, that the denial of defendant's motion was proper, even though the court applied an incorrect legal standard.

The propriety of the trial court's judgment, not its reasoning, is

before us on appeal. We may affirm the trial court's judgment on any ground warranted, regardless of whether the trial court relied on it and regardless of whether the trial court's reasoning was correct. *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 463 (1994). It is evident from the trial court's factual findings that there was no prosecutorial intent to provoke a mistrial. Accordingly, we will not reverse the trial court's decision.

In rendering its decision, the trial court made factual findings relevant to whether the prosecutor intended to provoke a mistrial. These findings will not be disturbed, as they are not against the manifest weight of the evidence. Further, the decision to deny the motion to discharge was not an abuse of discretion. See *Wilson*, 309 Ill. App. 3d at 242. First, the trial court found that there was no reason why the State would have wanted a mistrial and that the evidence was "going in a way that was not unfavorable to the State." Although defendant claims that he had been "poking holes" in the State's theory of the case during his cross-examination of the State's witnesses, he has not persuaded us that the court's assessment of the trial's progress was against the manifest weight of the evidence. Consequently, there is no evidence to support defendant's contention that the State wanted a mistrial.

The court found that the errors committed by Assistant State's Attorney Knight were "dumb mistakes" that did not amount to bad faith, implying that he did not act intentionally to provoke a mistrial. Defendant argues that the repeated inquiries about what defendant said to Shelton demonstrate an intent to subvert the protections of the double jeopardy clause. We disagree. Assistant State's Attorney Knight stated to the court, both orally and in an affidavit, that he did not intend to elicit testimony from Shelton that defendant asked to speak to an attorney. We find nothing in the record to indicate that the trial court's assessment of the nature of the prosecution's errors was against the manifest weight of the evidence, and, thus, there is insufficient evidence to support a determination that the trial court abused its discretion in denying the motion to discharge. While Assistant State's Attorney Knight should have advised Shelton not to mention defendant's request for an attorney, and while his questioning of Shelton perhaps should have been tailored to elicit a legally inoffensive response, these mistakes do not amount to prosecutorial intent to provoke a mistrial.

Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.