# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Bennett*, 2013 IL App (1st) 121168

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHANNON BENNETT, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1168 |
| Filed | July 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a murder trial, the denial of defendant's motion to dismiss all charges following the declaration of a mistrial was upheld, where the record failed to sustain his contention that the prosecutor's "dumb mistakes" were intended to provoke defendant's successful motion for a mistrial and warranted dismissal on double jeopardy grounds. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-11926; the Hon. Rosemary Grant-Higgins, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael F. Clancy, of Law Offices of Michael F. Clancy, Ltd., and Matthew McQuaid, both of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Peter Fischer and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.

Presiding Justice Neville and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1 During defendant Shannon Bennett's jury trial, his defense counsel successfully moved for a mistrial based on the prosecutor's introduction of evidence of Bennett's drug dealing. Bennett was charged with 18 counts of first degree murder in the 2008 shooting deaths of three people. Having secured a mistrial, Bennett's counsel moved to dismiss the charges altogether based on double jeopardy protections. Following written submissions on the motion, the trial court refused to dismiss the charges stating, "While I find that the State made a dumb mistake, I do not believe that it was the State's intent to goad the defendant into moving for a mistrial or that it was the State's intent to seek a new trial in the hopes of getting a more favorable result." Bennett, in this interlocutory appeal, contends the trial court erred in denying the motion to dismiss on double jeopardy grounds. We affirm.

¶ 2                              Background

¶ 3 At trial, the State asserted that Vanity Murff, Lawrence Jackson and Corey Washington were shot on June 29, 2008, in a dispute between the Lakeside Gangster Disciples and the Black P Stone gangs in retaliation for the earlier death of a friend of defendant. The State contended Bennett committed the crime accompanied by Senica Ratliff and John Williams, with Bennett as the gunman, and that Raymond Brown was friends with the victims but aided the offenders by letting them inside the victims' building.

¶ 4 Jeremi Brooks testified that in 2008 he was a Gangster Disciple and knew most of the people involved in the crime, including Bennett, whom Brooks said was a Gangster Disciple he knew "from around the neighborhood." Brooks said he also knew Brown from previously selling him crack cocaine. On the night of the shooting, Brooks observed Brown and Bennett plan the crime.

¶ 5 The State's next witness was Brown, who acknowledged he had been charged in the case and agreed to plead guilty to conspiracy to commit first degree murder. The prosecutor asked Brown if, as part of his plea agreement, he was placed in protective custody. Defense counsel

objected and, in a sidebar discussion, counsel requested a mistrial, asserting the question implied Bennett was a "dangerous person." The prosecutor responded the jury had the right to know the circumstances of Brown's plea agreement. The court sustained Bennett's counsel's objection, concluding the probative value of the fact of protective custody was outweighed by its prejudicial effect. The prosecutor withdrew the question. The court denied Bennett's motion for a mistrial. Brown testified that he would likely receive a 12-year sentence in exchange for his plea.

¶ 6 The prosecutor then asked Brown how he knew Bennett and if he knew Bennett was in a gang in 2008. Brown responded he knew Bennett was a "GD" and had previously bought drugs from Bennett. The defense objected when the prosecutor asked Brown how many times he had purchased drugs from Bennett. The court noted that the State's attempt to establish that Bennett sold drugs did not prove Bennett was involved in a gang.

¶ 7 The defense made a second request for a mistrial, arguing the questioning was prejudicial to Bennett and the State had not asked in a motion *in limine* to introduce evidence of Bennett's other crimes. The prosecutor responded that his motion to introduce gang evidence encompassed the introduction of Bennett's drug activity. The court sustained the defense's objection to the evidence of Bennett's drug dealing. The court denied the defense motion for a mistrial.

¶ 8 Defense counsel asked the court to reconsider its ruling, asserting the State did not disclose in discovery that it would elicit testimony from Brown about buying drugs before the murder. The court continued the case to the next day for further argument on the defense's motion for a mistrial.

¶ 9 After hearing argument the following day, the court granted the defense's request for a mistrial after concluding the State's question regarding drug transactions between Brooks and Bennett was prejudicial. The court went on to say: "However, since I find that there was no intent by the State, we can pick another jury right now, if you like." The court and counsel for both sides discussed scheduling matters, and Bennett's counsel informed the court he planned to file a motion to dismiss "based on double jeopardy."

¶ 10 In the motion, defense counsel argued Bennett's retrial on the charges was barred by the protection against double jeopardy in the United States and Illinois Constitutions. Counsel argued that by eliciting testimony from Brown regarding protective custody and Bennett's drug dealing, the prosecutor "intended to gain an unfair advantage" over Bennett and attempted "to force the defense to request a mistrial to then avoid a possible guilty verdict based on the taint of the misconduct." Defense counsel asserted the prosecutor intentionally sought to cast Bennett in a bad light and would either obtain a guilty verdict or a mistrial, which are both beneficial outcomes for the State.

¶ 11 The State filed a written response, asserting the questioning of Brown about his protective custody status did not prejudice the defense and that the evidence of Bennett's drug sales to Brown did not qualify as "other crimes" evidence but was instead intertwined with the facts of the case against Bennett. The State argued no evidence established that the prosecutor engaged in acts to lure the defense into requesting a mistrial.

¶ 12 On April 2, 2012, the court denied Bennett's motion to dismiss the case against him on

double jeopardy grounds. Noting the standard for double jeopardy was the State's intent to "get the defendant to request a mistrial," the court stated the State did not act with that intent in attempting to elicit evidence of Brown's protective custody or Bennett's other crimes, finding the record established the State sought to lay a proper foundation for Brown's knowledge of Bennett's gang affiliation.

¶ 13                                    Analysis

¶ 14    On appeal, Bennett argues the record establishes the prosecutor's questioning of Brown was intended to force the defense into seeking a mistrial. Bennett contends the prosecutor acted purposely in eliciting prejudicial testimony under both lines of questioning and attempted to goad the defense into requesting a mistrial.

¶ 15    Both the United States and Illinois Constitutions protect a criminal defendant from successive prosecutions for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Illinois Supreme Court Rule 604(f) provides that a defendant may appeal to this court "the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy." Ill. S. Ct. R. 604(f) (eff. July 1, 2006). Where the defendant, rather than the State, moves for a mistrial, "the defendant is deemed to have deliberately chosen to forgo his valued right to have his guilt or innocence determined before the first trier of fact. *People v. Nelson*, 193 Ill. 2d 216, 220-21 (2000)." *People v. Longoria*, 375 Ill. App. 3d 346, 350 (2007).

¶ 16    For double jeopardy principles to bar a retrial, the prosecutor must actually engage in conduct intended to cause a defendant to seek a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). Illinois courts follow the standard of intent set out in *Kennedy*. See *People v. Davis*, 112 Ill. 2d 78, 86 (1986); *People v. Ramirez*, 114 Ill. 2d 125, 130 (1986). A prosecutor's harassment, overreaching, or bad faith does not suffice. *People ex rel. City of Chicago v. Hollins*, 368 Ill. App. 3d 934, 942 (2006) (quoting *Kennedy*, 456 U.S. at 675-76). Double jeopardy attaches only when "the prosecutor's actual intent was to 'goad' the defendant into moving for a mistrial," a rare circumstance. *People ex rel. City of Chicago v. Hollins*, 368 Ill. App. 3d 934, 942 (2006). One court described the inquiry as not "WHAT the prosecutor did, but only WHY he [or she] did it." *Giddons v. State*, 878 A.2d 687, 706 (Md. Ct. Spec. App. 2005).

¶ 17    Bennett does not set forth a standard of review to be applied in this case. This court has applied an abuse of discretion standard in reviewing a trial court's ruling on a motion to dismiss charges on double jeopardy grounds. *People v. Griffith*, 404 Ill. App. 3d 1072, 1079 (2010); see also *People v. Hill*, 353 Ill. App. 3d 961, 964 (2004); *People v. Campos*, 349 Ill. App. 3d 172, 174-75 (2004) (discussing and rejecting use of *de novo* standard). In these cases, the trial court is charged with determining the intent of the prosecutor, which is a factual question. *Campos*, 349 Ill. App. 3d at 175. The trial judge is in a far better position than an appellate panel to discern and decide the intentions of the prosecutors. *People v. Ortega*, 209 Ill. 2d 354, 363 (2004). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 18    Bennett contends the prosecutor acted intentionally in eliciting the inadmissible

testimony and "intended to gain an unfair advantage" over the defense. As the State points out on appeal, though, that does not rise to the level of provoking the defense into requesting a mistrial. As the United States Supreme Court observed in *Kennedy*, 456 U.S. at 674, "[e]very act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."

¶ 19 Here, the prosecutor did not demonstrate an intent to force the defense to request a mistrial. As the record demonstrates, the trial court expressly rejected the contention that the prosecution offered evidence of Bennett's other crimes to goad the defense into requesting a mistrial. In concluding the State "did not engage in prosecutorial overreaching," the court noted the prosecutor had only presented the substantive testimony of two witnesses (Brooks and Brown) and it was unlikely that "the State would have wanted to start over with a different jury."

¶ 20 As to the State's questioning of Brown about protective custody, the court observed:

"The State was going down a line of permissible questions normally done to provide the jury with a basis to assess the witness' credibility. Even though he asked one question too many I do not find that it was the State's actual intent to goad the defendant into declaring a mistrial."

¶ 21 Regarding the prosecutor's introduction of other crimes evidence as to Brown, the court concluded that even though the State failed to inform the defense it planned to introduce that evidence, the State did not intend to cause a mistrial. The trial court noted that although the prosecutor erred in the method of eliciting testimony from Brown, the State's case "appeared to be going well" and no evidence suggested the State's conduct was "aimed at getting the defendant to object and request a mistrial."

¶ 22 At the crux of the mistrial were what Bennett describes as a "leading question that was intentional and improper," and an improper question that was a "technical violation," which he says were not "accidental" or "innocent" or "unintentional mistake[s]." These characterizations pertain to what the prosecutor did without offering an explanation of why. For instance, Bennett contends the prosecutor's conduct must have been intended since he was an experienced assistant State's Attorney. This court has already rejected the "experience informs intent" argument. *Hollins*, 368 Ill. App. 3d at 944. Bennet also argues that the questions violated "fundamental [rules of] criminal evidence and procedure" that "form the basis for reversible error in many cases on appellate review." Yet, he cites no case in support and ignores the trial court's observation that "it is clear that the Second District may allow such questions." Nor does his assertion that his defense theory was so "unique" that on "subsequent retrial, [he] loses the advantage that he gained during opening statements and cross-examination of Brooks" carry any weight. What this "unique" theory was he leaves unclear.

¶ 23 In sum, nothing in the record demonstrates that the prosecutor intended to provoke a motion for a mistrial. "Dumb mistakes," as the trial court called the questions, occur in the midst of the harried atmosphere of a trial by able prosecutors and able defense counsel alike. Although the judge, after thorough study, declared a mistrial, nothing in the record establishes anything approaching the requisite intent that *Kennedy* and its progeny require

-5-

for double jeopardy to result. As *Kennedy* recognized, "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675-76. That level of conscious undermining of the criminal trial process is absent here.

¶ 24 Given this record, the trial court did not abuse its discretion in determining the prosecutor lacked the intent to provoke the defendant into seeking a mistrial.

¶ 25 Accordingly, the judgment of the trial court is affirmed.

¶ 26 Affirmed.