**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230363-U

Order filed August 5, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0363 Circuit No. 22-CM-113 |
| RICHARD S. GABRYS JR., | ) ) ) | Honorable Sherri Hale, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   (1) Granting a motion to reopen the proofs did not create an issue of double jeopardy, and (2) the circuit court's finding that the prosecutor did not intentionally precipitate a mistrial was not against the manifest weight of the evidence.

¶ 2    Defendant, Richard S. Gabrys Jr., brings an interlocutory appeal from the Will County circuit court's denial of a motion to dismiss on the grounds of double jeopardy. Defendant argues (1) the court erred when it granted the State leave to reopen the proofs, and (2) the prosecutor intentionally precipitated a mistrial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was charged with two counts of harassment by telephone (720 ILCS 5/26.5-2(a)(2) (West 2020)) and two counts of harassment through electronic communication (*id.* § 26.5-3(a)) based on two telephone calls he made to the Will County State's Attorney's Office. The case proceeded to a jury trial on March 28, 2023. The State was represented by a special prosecutor.

¶ 5          Prior to trial, the prosecutor filed a motion *in limine* seeking to introduce numerous phone calls made by defendant to the state's attorney's office, arguing the calls would allow the State to "demonstrate motive, intent, absence of mistake and to establish identity." The court allowed the motion.

¶ 6          During jury selection, the court indicated it would not permit "back striking," the practice of utilizing peremptory challenges to strike jurors after the parties have accepted those jurors but before the entire venire has been sworn in. After both parties accepted the first panel of four jurors, the prosecutor asked whether he would have an opportunity to question the jurors further before exercising a peremptory challenge. The court reiterated that it would not permit the prosecutor to question the jurors that had been previously accepted, to which the prosecutor responded that he would have liked to ask additional questions to two jurors. The prosecutor apologized for the misunderstanding, and the court advised the prosecutor that he could strike jurors going forward.

¶ 7          At trial, defense counsel's opening statement conceded defendant had made numerous calls to the state's attorney's office but argued defendant did not have the "intent to harass and offend anyone" when he made those calls. The State called Jim Long, Katherine Norkus, and Jacqueline Borunda, employees of the Will County State's Attorney's Office, who each testified that throughout 2021 they received numerous irate and unpleasant phone calls from a person identifying himself as defendant. Borunda testified that the calls began in April of 2021 and

2

continued throughout 2021, including July 16, August 17, August 23, and September 17, 2021. Norkus testified that defendant called "many times" in August, and she fielded "over fifty calls from him," including calls on September 17 and October 15, 2021. Long stated he became aware of the harassing calls on July 7, 2021, and began recording them. The calls frequently devolved into screaming and obscene language, and Norkus and Borunda both felt afraid and disturbed. The prosecutor, through Borunda and Norkus, introduced recordings of two phone calls, dated September 17 and October 15, 2021, which were admitted and published without objection.

¶ 8        The prosecutor also presented a stipulation to the jury, stating that, if called, a "duly qualified custodian of records for AT&T" would testify that in 2021, two phone numbers "belonged to the defendant" and those numbers were used to make "repeated calls to the Will County State's Attorney's Office."

¶ 9        The State then rested. Defendant moved for a directed verdict, arguing the State had failed to identify defendant as the person who made the calls. The prosecutor stated that he "didn't think that was an issue in this case" given the stipulation and defendant's articulation of the issues in opening statements. However, "in an abundance of caution," the prosecutor moved to reopen the proofs, and the court granted the motion.

¶ 10       The prosecutor indicated he intended to call Officer Nicholas Giordano. Defendant objected to Giordano's testimony on the grounds that (1) he was not disclosed to the jury as a potential witness, and (2) a report he generated was not tendered to the defense. The court allowed the prosecutor to call Giordano after polling the jury to determine if any of the jurors knew Giordano, which none did. Giordano testified that on March 1, 2022, he transported defendant to the county jail. A video of defendant in the back of Giordano's squad car was admitted and

published to the jury. In the video, defendant's face was visible, and he admitted to calling the state's attorney's office.

¶ 11     The State then rested. Defendant was admonished regarding his right to testify and waived this right in open court. Defendant then moved for a directed verdict, arguing the court had erred when it admonished defendant in open court and allowed the jury to hear defendant's voice. That motion was also denied. Defendant proposed offering a jury instruction admonishing the jury it was not to consider defendant's exchange with the court as evidence. The prosecutor opposed the motion, arguing it was unnecessary because defendant's statement waiving his right to testify was not testimonial, and a nonstandard jury instruction would draw unnecessary attention to the statement. The court allowed defendant's motion to include the limiting instruction.

¶ 12     During closing arguments, the prosecutor implored the jury to listen to defendant's phone calls. Specifically, he asked the jury to focus on a call defendant made to the state's attorney's office on September 17, 2021. He then played an audio recording. After the audio recording concluded, the prosecutor apologized for accidentally playing a recording from September 27, 2021, and then played the actual recording from September 17, 2021. When the second audio recording concluded, the court excused the jury, and defendant moved for a mistrial, arguing the September 27, 2021, call was never introduced into evidence.

¶ 13     The prosecutor conceded the call placed on September 27, 2021, was not introduced in the State's case-in-chief but argued that a mistrial was not necessary. He noted he had played the wrong clip by mistake but contended the call placed on September 27, 2021, did not prejudice defendant. The court granted the motion for a mistrial, and the prosecutor continued to argue against the necessity for a mistrial. He pointed out that, although he had not admitted the call into evidence, the clip he played had been declared admissible prior to trial and was referenced along

4

with other calls during the State's case in chief. The prosecutor urged the court to admonish him on the record in lieu of declaring a mistrial, particularly in light of the "overwhelming proof of the defendant's guilt[.]" Nonetheless, the court, "erring on the side of caution," granted defendant's motion for a mistrial.

¶ 14    Defendant moved to dismiss the case on the grounds of double jeopardy, claiming he had already twice been exposed to jeopardy because the court had reopened the proofs. He further contended the prosecutor intentionally goaded him into moving for a mistrial. After a hearing, the court denied the motion to dismiss, finding that reopening the proofs did not lead the court to "any such finding of goading," and, further, the prosecutor "having wanted to strike maybe one juror out of 12" did not lead the court to believe the prosecutor desired a mistrial. Defendant appealed the court's order.

¶ 15                                      II. ANALYSIS

¶ 16    On appeal, defendant claims (1) the circuit court's decision to reopen the proofs placed him in jeopardy a second time, and (2) the prosecutor intentionally provoked a mistrial. The right to be free from successive prosecutions for the same offense is protected by both the United States Constitution and the Illinois Constitution. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Double jeopardy prevents (1) retrial for the same offense following an acquittal, (2) retrial for the same offense following a conviction, and (3) multiple punishments for the same offense. *People v. Gaines*, 2020 IL 125165, ¶ 22. An event terminating jeopardy, such as an acquittal, is necessary for a defendant to assert a double jeopardy claim. *People v. Cordero*, 2012 IL App (2d) 101113, ¶¶ 9-11. In the absence of a terminating event, defendant's claim must fail. *Id.*

¶ 17    Here, defendant was never acquitted or convicted. Instead, the circuit court allowed the State to reopen proofs following a motion for a directed verdict, then later declared a mistrial. At

5

the time the court reopened the proofs, defendant's jeopardy had not terminated since he was neither convicted nor acquitted. Thus, defendant's claim that he was twice subjected to jeopardy when the court reopened the proofs must fail because his original jeopardy had not terminated. See *People v. Kotlarchik*, 2022 IL App (2d) 200358, ¶ 13.

¶ 18 Next, defendant contends the prosecutor intentionally goaded him into seeking a mistrial. Ordinarily, "when the defendant *** moves for a mistrial, the defendant is deemed to have deliberately chosen to forgo his valued right to have his guilt or innocence determined" before a particular jury, and defendant may be retried without triggering double jeopardy. *People v. Longoria*, 375 Ill. App. 3d 346, 350 (2007). However, a " 'narrow exception' " to this principle exists: retrial is barred when the prosecutor has engaged in conduct deliberately intended to cause a defendant to seek a mistrial. *People v. Campos*, 349 Ill. App. 3d 172, 176 (2004) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982)).

¶ 19 The parties do not agree on the standard of review we should employ in reviewing this claim. Defendant contends *de novo* review is appropriate because the court did not conduct an evidentiary hearing and therefore made no factual findings. The State maintains we should review the court's decision for an abuse of discretion. The court was not required to conduct a separate evidentiary hearing to determine the prosecutor's intent, particularly when the same judge who conducted the trial heard the motion to dismiss. *People ex rel. City of Chicago v. Hollins*, 368 Ill. App. 3d 934, 945-46 (2006). Under such circumstances, the court can properly rely on its own review of the record and its observations of the prosecutor. *Id.* Because the circuit court is in a superior position to determine the prosecutor's motives, we will not reverse its factual findings unless they are against the manifest weight of the evidence. *Id.* However, we review the court's ultimate decision for an abuse of the court's discretion. *Campos*, 349 Ill. App. 3d at 175. An abuse

of discretion occurs when the circuit court's decision is arbitrary, unreasonable, or no reasonable person would agree with it. *Id.*

¶ 20     In reviewing a motion to dismiss for double jeopardy, our task is not to review the sufficiency of the evidence (*Kotlarchik*, 2022 IL App (2d) 200358, ¶ 8), but to determine whether the prosecutor intentionally provoked a mistrial. *Campos*, 349 Ill. App. 3d at 176. The primary factor in determining whether the State intended to provoke a mistrial is the intent of the prosecutor. *People v. Weinke*, 2021 IL App (1st) 180270, ¶ 25. Put another way, our inquiry is not *what* the prosecutor did but *why*. *People v. Bennett*, 2013 IL App (1st) 121168, ¶ 16. Actions taken by the prosecutor in pursuit of a conviction, even actions that could be described as misconduct, do not, by themselves demonstrate intent to provoke a mistrial. See *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993) (provided the prosecutor's aim is to secure a conviction, misconduct, even intentional misconduct, does not bar retrial); *Campos*, 349 Ill. App. 3d at 177 (without more, mistakes are insufficient to indicate prosecutorial intent to provoke a mistrial).

¶ 21     Defendant asserts the prosecutor's intent can be inferred from the prosecutor's "numerous prejudicial mistakes and reversable errors." Defendant points to the prosecutor (1) presenting insufficient evidence and being forced to reopen the proofs; (2) committing "reversable errors," including calling an undisclosed witness (Giordano) and utilizing a report not previously tendered to the defense; (3) impaneling a juror he wished to strike; and (4) objecting to a limiting instruction on the issue of defendant's right to silence. Defendant further points to the strength of his own case, claiming he was "assured of acquittal" and suggests the prosecutor forced a mistrial to avoid either failing to prove defendant guilty or having the case overturned on appeal.

¶ 22     The evidence to which defendant points does not rise to the "strong showing" required to invoke the protection against double jeopardy. *People v. Nelson*, 193 Ill. 2d 216, 221 (2000). To

7

the contrary, our review of the record indicates the prosecutor actively fought the motion for a mistrial and afterward stringently urged the court to reconsider its ruling. At each stage of the trial, up to and including the point at which the court declared a mistrial, the prosecutor appeared to believe his case was strong. In arguing against declaring a mistrial, he described the evidence as "overwhelming." Moreover, only "deliberate prosecutorial misconduct" in provoking a mistrial implicates double jeopardy. *People v. Shannon*, 2022 IL App (3d) 210121, ¶ 17. It is far from clear that the conduct resulting in a mistrial here was deliberately calculated to precipitate such a result. While the prosecutor admitted he had played the wrong recording, he stated he did so by mistake, which is insufficient to show intent to provoke a mistrial. See *Campos*, 349 Ill. App. 3d at 177. Accordingly, the circuit court found that the prosecutor presented rational explanations for his actions at trial and did not intend to provoke a mistrial. The court's factual findings were not against the manifest weight of the evidence, and thus, the court did not abuse its discretion in denying the motion to dismiss.

¶ 23    In reaching this conclusion, we reject defendant's contention that the circuit court's decision to allow the prosecutor to reopen the proofs suggests the prosecutor intended to provoke a mistrial. If anything, securing a favorable ruling on that issue suggests the prosecutor intended to ensure a conviction. We similarly reject defendant's assertion that the court's allowing Giordano to testify carries the same implication. Seeking to reopen the proofs and to call Giordano to testify were actions taken in furtherance of securing a conviction and do not suggest an intent to goad defendant into seeking a mistrial. See *Kennedy*, 456 U.S. at 674 ("[e]very act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt.").

¶ 24    We further reject defendant's contentions regarding the prosecutor's conduct during jury selection and argument against a limiting instruction. First, the prosecutor stated he would have preferred to question two jurors further before deciding whether to exercise a peremptory strike. The desire to further question two jurors does not indicate the prosecutor wanted to strike those jurors. Even if he had wanted to strike a juror, the court found that the prosecutor "having wanted to strike maybe one juror out of 12" did not lead the court to believe that the prosecutor had goaded defendant into moving for a mistrial, and the court's finding on this issue was not against the manifest weight of the evidence. Second, it is perfectly consistent with the State's aim of securing a conviction to endorse a limiting instruction in some circumstances and not in others, and actions taken with the goal of obtaining a conviction do not suggest intent to provoke a mistrial. *Id.*

¶ 25                                  III. CONCLUSION

¶ 26    The judgment of the circuit court of Will County is affirmed.

¶ 27    Affirmed.