(No. 62311.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GIRVIES DAVIS, Appellant.

*Opinion filed April 4, 1986.*

SIMON, J., dissenting.

Charles M. Schiedel, Deputy Defender, of the Office

of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and James E. Fitzgerald, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Girvies Davis, was convicted of murder and sentenced to death. On appeal, this court affirmed the conviction but, because of errors that had occurred at the sentencing hearing, vacated the death sentence and remanded the cause for further proceedings. (97 Ill. 2d 1.) In advance of a second capital sentencing hearing the defendant raised the objection, on grounds of double jeopardy, that the State was precluded from attempting to obtain a death sentence a second time for the same conviction. The trial judge denied a motion to dismiss the capital sentencing proceedings, and the defendant immediately sought review of that decision in the appellate court. (See 94 Ill. 2d R. 604(f).) On the State's motion we allowed a direct appeal of the question to this court (94 Ill. 2d R. 302(b)), and we now affirm the judgment of the circuit court.

The defendant's conviction here came in a bench trial in the circuit court of Madison County. The defendant then requested a jury for his capital sentencing hearing, and following a bifurcated proceeding he was sentenced to death. This court vacated the death sentence because of errors that had occurred during the first part of the sentencing hearing; it was during that stage that the jury determined the defendant's eligibility for the death penalty. One of the statutory aggravating circumstances urged by the State in contending that the defendant

could be sentenced to death was that he had murdered more than one person, and the errors committed at the sentencing hearing stemmed from proof adduced by the State concerning several other murders for which the defendant had been found guilty. Specifically, this court found reversible error in the introduction into evidence of a certified copy of a murder conviction that contained the information that the defendant had been sentenced to death for that offense; an accompanying docket entry, also introduced into evidence, was to the same effect. The court said, "Although this error alone is sufficient to warrant reversal of defendant's death sentence, it is combined with other errors which mandate that defendant receive a new sentencing hearing." (97 Ill. 2d 1, 27.) Those other errors, which also occurred in the first stage of the bifurcated hearing, during which death penalty eligibility was determined by the jury, consisted of testimony and argument that the wife of a murder victim gave birth the day after her husband's death, the introduction into evidence of crime-scene photographs of a murder victim, and the introduction into evidence of a murder victim's blood-stained shirt. (97 Ill. 2d 1, 27-29.) Having concluded that a new sentencing hearing was required, the court remanded the cause for further proceedings.

Although principles of double jeopardy generally do not apply to sentencing determinations (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072), the defendant correctly observes that they may be applicable in a capital sentencing hearing (*Arizona v. Rumsey* (1984), 467 U.S. 203, 81 L. Ed. 2d 164, 104 S. Ct. 2305; *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852). We note that the capital sentencing procedures of this State share many of the characteristics that the Supreme Court has found significant in applying principles of double jeop-

ardy to those sentencing determinations. (See *Arizona v. Rumsey* (1984), 467 U.S. 203, 209-11, 81 L. Ed. 2d 164, 170-71, 104 S. Ct. 2305, 2310; *Bullington v. Missouri* (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 278-79, 101 S. Ct. 1852, 1858.) For example, in the sentencing proceeding here, the State was required to prove, as a prerequisite for a sentence of death, the existence of a statutory aggravating circumstance beyond a reasonable doubt. (See Ill. Rev. Stat. 1979, ch. 38, par. 9—1(f).) Moreover, the usual rules of evidence governed that determination, and the discretion of the sentencing authority—in this case, a jury—was carefully guided. (See Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(e), (g).) The sentencing proceeding was essentially "a trial on the issue of punishment" (*Bullington v. Missouri* (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 279, 101 S. Ct. 1852, 1858), and therefore a determination, either in the trial court or on review, that the defendant was not eligible for the death penalty would have operated as an acquittal of an element essential to a sentence of death.

The defendant contends that a second capital sentencing hearing for the conviction here is barred on grounds of double jeopardy because no factual finding was made at the original trial or sentencing hearing that he actually killed or intended to kill the victim. In *Enmund v. Florida* (1982), 458 U.S. 782, 797, 73 L. Ed. 2d 1140, 1151, 102 S. Ct. 3368, 3376, the Supreme Court held that the eighth amendment prohibits imposing a sentence of death on one "who aids and abets a felony in the course of which a murder is committed but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." In *Cabana v. Bullock* (1986), 474 U.S. 376, 384-87, 88 L. Ed. 2d 704, 715-17, 106 S. Ct. 689, 696-97, the court explained that the limitation expressed in *Enmund* does not pertain to guilt or innocence but rather is a means of

insuring proportionality in capital sentencing. *Bullock* held also that the factual finding required under *Enmund* need not occur in the trial court but may be made instead on review. (474 U.S. 376, 384-88, 88 L. Ed. 2d 704, 715-17, 106 S. Ct. 689, 696-97.) In this regard, we note that in the original appeal, in finding that *Enmund* did not preclude imposition of the death penalty here, this court said, "In the instant case, according to defendant's own statement, he obtained and loaded the rifle with which [the codefendant] shot the victim." (97 Ill. 2d 1, 24.) The court mentioned also the testimony of a police officer that the defendant had explained that the victim of the murder here and the victims of other murders for which the defendant was guilty "were murdered to assure that he would not be identified." (97 Ill. 2d 1, 24.) Moreover, from the reasoning in *Bullock*, it would appear that the proportionality finding envisioned by *Enmund* was not required to be made in the original appeal, once the court determined to vacate the sentence and remand the cause for further proceedings; the *Enmund* finding could await an ultimate affirmance by this court of a sentence of death.

The defendant also argues, on grounds of double jeopardy, that this court's earlier decision vacating his death sentence precludes a second capital sentencing hearing for the conviction here. In the earlier appeal, the determination made at the first part of the sentencing hearing that the defendant could be sentenced to death was set aside not because of evidentiary insufficiency but because of errors occurring in that part of the proceedings. To the extent that principles of double jeopardy are applicable to a capital sentencing hearing, the case would seem to fall within the well-established rule that reversal of a judgment for trial error, rather than evidentiary insufficiency, will not bar retrial, or here, a second capital sentencing hearing. (See, *e.g., Tibbs v. Florida* (1982),

457 U.S. 31, 39-40, 72 L. Ed. 2d 652, 659-60, 102 S. Ct. 2211, 2216-17; *United States v. DiFrancesco* (1980), 449 U.S. 117, 131, 66 L. Ed. 2d 328, 341-42, 101 S. Ct. 426, 434.) In *Burks v. United States* (1978), 437 U.S. 1, 15-16, 57 L. Ed. 2d 1, 12-13, 98 S. Ct. 2141, 2149-50, the court explained:

"[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. [Citation.]

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury." (Emphasis in original.)

The distinction between reversals for trial error and reversals for evidentiary insufficiency would appear to be equally valid here. To avoid the effect of that rule, the defendant contends that the usual explanations for it simply do not apply here. Thus, the defendant points to the statement in *United States v. Tateo* (1964), 377 U.S. 463, 466, 12 L. Ed. 2d 448, 451, 84 S. Ct. 1587, 1589, which *Burks* cited approvingly (*Burks v. United States* (1978), 437 U.S. 1, 15, 57 L. Ed. 2d 1, 12, 98 S. Ct. 2141, 2149), "It would be a high price indeed for society to pay were every accused granted immunity from pun-

ishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction," and observes that he is not seeking to avoid all punishment for this conviction but only a sentence of death. The defendant points also to the statement in *North Carolina v. Pearce* (1969), 395 U.S. 711, 721, 23 L. Ed. 2d 656, 667, 89 S. Ct. 2072, 2078, that the rule allowing retrial following a reversal for any reason other than evidentiary insufficiency "rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean," and observes that his original appeal was automatic and mandatory. In *Tateo* and *Pearce* the court was not concerned, however, with the application of double jeopardy principles to capital sentencing proceedings. Although the defendant may contend that his situation does not fall within a literal and limited interpretation of the passages quoted, he has not explained why the reversal of his death sentence because of errors occurring in the proceeding should be treated differently from the reversal of a conviction for trial error. That a mandatory and automatic appeal is taken to the State's highest court following the imposition of a sentence of death can only benefit a defendant, and it serves society's interest in seeing that the penalty is imposed fairly; that interest would not be served were we to adopt the defendant's view and bar a second capital sentencing hearing after the first death sentence has been set aside not for evidentiary insufficiency but because of trial errors that occurred in the course of the original proceeding.

As a final reason for the argument that reversal of the sentence because of errors occurring in the original death penalty proceeding bars a second capital sentencing hearing, the defendant contends that the result in the first appeal was tantamount to the declaration of a mistrial provoked by the State. The defendant invokes

the rule expressed in *Oregon v. Kennedy* (1982), 456 U.S. 667, 679, 72 L. Ed. 2d 416, 426-27, 102 S. Ct. 2083, 2091, which bars retrial when the State intentionally provokes a successful motion by a defendant for a mistrial, and would extend it to cases in which the judgment is reversed on appeal for errors that would have justified the declaration of a mistrial by the trial court.

The argument may be made that the reversal of a trial court's erroneous denial of a motion for a mistrial, which the State has intentionally provoked, deserves the same preclusive effect as if the mistrial had been declared in the first instance. (See, *e.g., Oregon v. Kennedy* (1982), 456 U.S. 667, 687 n.22, 72 L. Ed. 2d 416, 432 n.22, 102 S. Ct. 2083, 2095-96 n.22 (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., concurring in the judgment); *United States v. Curtis* (3d Cir. 1982), 683 F.2d 769, 772-76; *United States v. Singleterry* (5th Cir. 1982), 683 F.2d 122, 123-24; *United States v. Rios* (10th Cir. 1980), 637 F.2d 728, 729.) Here a motion for mistrial was not made, and the defendant would appear to be unable to take advantage of the rule he suggests. Moreover, the defendant's failure to move for a mistrial in the sentencing hearing means also that we are denied a finding by the trial judge on the question. We note, though, that the record contains nothing that would support the inference that the prosecutor committed the errors in question with the intent to provoke a motion for a mistrial.

The defendant's sentence of death was reversed by this court because of errors occurring in that part of the proceeding that determined that he could be sentenced to death. To the extent that principles of double jeopardy are applicable here, we see no reason here to depart from the normal rule that the reversal of a judgment for trial error is not a bar to retrial, or here, to another capital sentencing proceeding.

For the reasons stated, the judgment of the circuit court is affirmed and the cause is remanded for further proceedings consistent with this opinion.

*Affirmed and remanded.*

JUSTICE SIMON, dissenting:

Even if the majority is correct in its conclusion that holding a second capital sentencing hearing here would not violate the guarantee against double jeopardy, I cannot agree that the defendant should be subjected to another hearing because of my view set forth in the following cases that the Illinois death penalty statute is unconstitutional. See *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part).