**SIXTH DIVISION**
**SEPTEMBER 30, 2010**

No. 1-09-1001

THE PEOPLE OF THE STATE OF ILLINOIS,)   Appeal from the
                                     )   Circuit Court of
     Plaintiff-Appellee,             )   Cook County.
                                     )
          v.                         )   No. 85 C 6850
                                     )
EVAN GRIFFITH,                       )   The Honorable
                                     )   John J. Fleming,
     Defendant-Appellant.            )   Judge Presiding.


     PRESIDING JUSTICE GARCIA delivered the opinion of the court.

     Defendant Evan Griffith was convicted of felony murder in a
jury trial in 1999, during which, according to the published
opinion of this court, prosecutor Laura Morask engaged in
numerous instances of prosecutorial misconduct, which "called
into question the State's commitment to fair and just
enforcement of the law." People v. Griffith, 334 Ill. App. 3d
98, 119, 777 N.E.2d 459 (2002).  Nevertheless, "the overwhelming
evidence in support of the felony murder charge *** constrained
[this court] to affirm Griffith's conviction and sentence."
Griffith, 334 Ill. App. 3d at 121.  In 2008, a federal district
court, quoting at length from the scathing review by this court
of the prosecutor's trial conduct, granted the defendant's
petition for a writ of habeas corpus and ordered a new trial.
The district court found prosecutor Laura Morask's "misconduct
'so infected the trial with unfairness as to make the resulting
conviction a denial of due process.' "  United States ex rel.

No. 1-09-1001

Griffith v. Hulick, 587 F. Supp. 2d 899, 911, 912-13 (N.D. Ill. 2008) (mem. op.), quoting Darden v. Wainwright, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 157, 106 S. Ct. 2464, 2471 (1986). The State did not appeal the grant of the defendant's petition, but instead obtained a new indictment against the defendant. Before the circuit court of Cook County, the defendant filed a motion to dismiss the new indictment on double jeopardy and due process grounds, which Judge John J. Fleming denied. Before this court, in his interlocutory appeal, the defendant concedes "the current case law in Illinois would not apply the Double Jeopardy bar to his case" because both the Supreme Court of the United States and the Illinois Supreme Court require the intent behind the prosecutor's misconduct be to goad the defendant into seeking a mistrial to trigger the double jeopardy bar to a retrial. He urges that we read the double jeopardy clause of the Illinois Constitution much as the supreme courts of Oregon, Arizona, New Mexico, Pennsylvania, and Hawai'i, have read their respective constitutional double jeopardy provisions to provide expanded protection to bar a retrial when "intentional and systematic" prosecutorial misconduct deprives a defendant of fundamental fairness at trial. The State responds that only our supreme court can change current law and that under existing Illinois law, Illinois courts have repeatedly found unavailing similar claims based on prosecutorial misconduct for failure to demonstrate the prosecution intended to cause a mistrial. We

2

No. 1-09-1001

agree with the State. The defendant's retrial is not barred under current Illinois law, by which we are bound. We do not consider the defendant's separate due process claim because it is not subject to review on interlocutory appeal. We affirm.

BACKGROUND

This case has now been recounted in multiple court decisions during its more than decade-long history: Griffith, 587 F. Supp. 2d 899; People v. Griffith, No. 1-03-0713 (March 22, 2005) (unpublished order under Supreme Court Rule 23); Griffith, 334 Ill. App. 3d 98; People v. Griffith, No. 1-96-0112 (April 24, 1997) (unpublished order under Supreme Court Rule 23). We relate only the procedural history and the facts necessary to address the issue before us. As the defendant asserts, many of the facts are beyond dispute under the doctrine of collateral estoppel, citing People v. Tenner, 206 Ill. 2d 381, 396-97, 794 N.E.2d 238 (2002).

On May 11, 1985, 16-year-old Evan Griffith stabbed and killed 46-year-old Leroi Shanks, a former neighbor who had permitted the homeless Griffith to stay with him in exchange for sexual favors. In 1986, Griffith pleaded guilty to murdering Shanks and received a 35-year sentence.

The defendant filed a postconviction petition, contending he pleaded guilty and accepted the 35-year sentence because he was told that he was otherwise eligible for the death penalty. He later learned, however, that he was not death-penalty

3

No. 1-09-1001

eligible because he was a minor at the time of the offense. His conviction, arising from an involuntary plea of guilty, was vacated, and a new trial ordered. Griffith, No. 1-96-0112.

Prosecutorial Misconduct

In 1999, the defendant proceeded to a jury trial on the 1985 murder of Shanks. The defendant claimed self-defense. During his testimony, he suggested that his actions were motivated by fear that Shanks would kill him, hurt him, or sexually abuse him, when Shanks, returning home, found the defendant had broken into a safe Shanks kept in his home. The State and the defendant presented various experts regarding the defendant's mental state at the time of the killing.

Lead prosecutor Laura Morask sought the trial court's permission to examine the defendant and his expert witness regarding a 1990 incident that occurred while the defendant was incarcerated for Shanks' murder. In that incident, the defendant was tried and convicted before a jury of killing a fellow inmate and was sentenced to death.[1] Prosecutor Morask told the court it was necessary to inquire into the 1990 incident to negate the defense theory that the defendant was influenced by post-traumatic stress disorder (PTSD) when he killed Shanks. Griffith, 334 Ill. App. 3d at 117. She claimed

_____

[1] In 2003, Illinois Governor George Ryan commuted his sentence to life in prison.

4

No. 1-09-1001

the State's expert had examined the 1990 records and found them relevant to rebut the PTSD defense. The trial court expressed concern that evidence of the 1990 incident would unduly prejudice the defendant, but nonetheless allowed the prosecutor to raise the 1990 incident based on her representation that she would "sanitize" the evidence and avoid calling the 1990 incident a "murder." Griffith, 334 Ill. App. 3d at 117. She stated, " 'We don't have to go into that the victim died, what his sentence was, or any of that. *** We don't have to put in the fact that he was in prison when the stabbing occurred.' " Griffith, 334 Ill. App. 3d at 117.

The State's expert had in fact never seen records of the 1990 incident and knew nothing about them. Griffith, 334 Ill. App. 3d at 117. On cross-examination of the defendant's expert, the prosecutor broke her promise not to reference the 1990 "murder." Griffith, 334 Ill. App. 3d at 117. In the ensuing sidebar, she moved to strike her remark and then referenced "the 1990 murder" during closing argument. Griffith, 334 Ill. App. 3d at 118. The prosecutor also intimated on cross-examination of the defendant that the 1990 incident took place in a prison. Griffith, 334 Ill. App. 3d at 117.

The trial court had prohibited the prosecution from informing the jury that the 1990 incident had resulted in a conviction, but the prosecutor noted on cross-examination of the defendant's expert that the expert had been hired after the 1990

5

incident "to lessen [someone's] sentence." Griffith, 334 Ill. App. 3d at 118. According to the trial court's instructions, the jury was not to know the defendant had been sentenced to death for the 1990 murder, but upon cross-examination of another defense expert, the prosecutor indicated the expert had previously been retained in another case by the "Capital Resource Center," and stated the Center "deals with trying to get a prisoner not to get the death penalty." Griffith, 334 Ill. App. 3d at 118.

During her rebuttal argument, the prosecutor likened the defendant to "walking barbeque tongs." Griffith, 334 Ill. App. 3d at 119. Regarding the 1990 killing, she argued the defendant just "stuck his arm out and [the victim] just happened to fall onto the knife." Griffith, 334 Ill. App. 3d at 119. With that skill, the defendant could be "worth a lot of money. You would put him near your barbeque and hot dogs and hamburgers just fly on and get poked by him." Griffith, 334 Ill. App. 3d at 119. She compared the defendant to " 'a grenade in a baby carriage' " that " 'explodes in your face' " (Griffith, 587 F. Supp. 2d at 906), and called him a " 'deranged Energizer bunny' " (Griffith, 587 F. Supp. 2d at 912). She said that accepting the argument by defense counsel would give the defendant a " 'license to kill' " and individuals like defense counsel were " 'the reason Shakespeare said let's kill all the lawyers.' " Griffith, 334 Ill. App. 3d at 119. She called the defendant's witnesses " 'a

6

joke,' " " 'ridiculous,' " and " 'pathetic.' " <u>Griffith</u>, 587 F.
Supp. 2d at 906.

The defendant moved for a mistrial several times during the
trial, with the trial court denying each motion. <u>Griffith</u>, 587
F. Supp. 2d at 904. The jury found the defendant guilty of
felony murder and armed robbery. He was sentenced to life in
prison without the possibility of parole.

The Appeals

The defendant appealed his conviction, arguing, among other
claims, that he was denied due process and a fair trial because
the lead prosecutor committed numerous instances of misconduct,
in particular, her use of the 1990 killing by the defendant. We
found "the prosecutor had no intention of limiting evidence of
the 1990 killing to the question of whether Griffith had PTSD in
1985." <u>Griffith</u>, 334 Ill. App. 3d at 117. The prosecutor had
used the 1990 killing "to convince the jury Griffith was a
violent and dangerous man who had a propensity to kill with a
knife." <u>Griffith</u>, 334 Ill. App. 3d at 117. "[Defense]
[o]bjections were made, some sustained, some overruled. It
didn't matter. Nothing stopped this prosecutor." <u>Griffith</u>, 334
Ill. App. 3d at 118. The "prosecutor's behavior *** called into
question the State's commitment to fair and just enforcement of
the law." <u>Griffith</u>, 334 Ill. App. 3d at 119.

Nevertheless, the overwhelming evidence constrained us to
affirm the defendant's conviction "despite the intentional and

systematic misconduct of the prosecutor." Griffith, 334 Ill. App. 3d at 119. "Not only did Griffith tell three friends, the arresting police officers, and the assistant State's Attorney he killed Shanks for the money, he made what amounts to a judicial confession when he testified at trial." Griffith, 334 Ill. App. 3d at 111. We found, "no rational jury could have found the defendant not guilty of felony murder." Griffith, 334 Ill. App. 3d at 119.

Following our decision, the defendant's initial pro se postconviction petition alleging numerous instances of ineffective assistance of counsel was summarily dismissed. Griffith, No. 1-03-0713, slip op. at 7. We affirmed the dismissal because no prejudice could be shown in light of the "evidence at trial overwhelmingly in favor of conviction." Griffith, No. 1-03-0713, slip op. at 7.

The defendant then brought a petition for a writ of habeas corpus before the federal district court pursuant to 28 U.S.C. §2254 (2006). The district court found the facts of the case as set forth in Griffith, 334 Ill. App. 3d 98, to be uncontroverted, which it repeated, along with some additional, uncontroverted facts gleaned from the record. Griffith, 587 F. Supp. 2d at 901. The court found the record "confirms many times over the Appellate Court's finding of repeated, deliberate prosecutorial misconduct." Griffith, 587 F. Supp. 2d at 911. It found the prosecutor's "dehumanizing [rhetoric] *** was

8

leveraged by her misuse of the 1990 crime evidence, the admission of which she had obtained on false premises." Griffith, 587 F. Supp. 2d at 912. The court concluded the defendant's conviction was a " 'denial of due process' " that "deprived Mr. Griffith of a fair trial." Griffith, 587 F. Supp. 2d at 912-13, quoting Darden, 477 U.S. at 181, 91 L. Ed. 2d at 157, 106 S. Ct. at 2471.

The court found the trial error was not subject to harmless error analysis, but rather required automatic reversal because " ' "the integrity of the proceeding was so infected that the entire trial was unfair." ' " Griffith, 587 F. Supp. 2d at 914, quoting Phillips v. Woodford, 267 F.3d 966, 986 n.14 (9th Cir. 2001), quoting Hardnett v. Marshall, 25 F.3d 875 879 (9th Cir. 1994). "To excuse the prosecutor's lies to the court, misuse of evidence, and other misconduct in this case would indeed render meaningless the principle that every defendant has a right to a fair trial." Griffith, 587 F. Supp. 2d at 914, citing Brecht v. Abrahamson, 507 U.S. 619, 638 n.9, 123 L. Ed. 2d 353, 373 n.9, 113 S. Ct. 1710, 1722 n.9 (1993). The court granted the defendant's petition for a writ of habeas corpus. Griffith, 587 F. Supp. 2d at 914.

After she granted the writ, Judge Bucklo of the federal district court entered an order on November 20, 2008, that the defendant be "released from custody on the judgment of conviction entered by the Circuit Court of Cook County in case

9

No. 1-09-1001

number 85 C 6850 unless, within 120 days of the entry of the amended judgment, the State of Illinois elects to commence proceedings to afford petitioner a new trial." The State did not appeal the decision, but in compliance with the federal order, filed a new indictment against the defendant.

Following his arraignment, the defendant moved to dismiss the indictment as barred by the protection against double jeopardy and by the due process clause of the United States and Illinois Constitutions. The State countered that under federal and Illinois law, there is no bar to a retrial when the reversal of a defendant's conviction is not based on the insufficiency of the evidence. The State emphasized that there was no evidence the prosecution had intended to "goad" the defendant into seeking a mistrial, which was never actually declared.

The circuit court found "[d]ouble jeopardy does not apply" because the State acted within its discretion to retry the defendant within 120 days. It also noted the trial had ended not in a mistrial, but in a conviction that was later overturned. Relying on People v. Sales, 357 Ill. App. 3d 863, 830 N.E.2d 846 (2005), the court declined to reach the issue of the prosecution's intent in the absence of a mistrial, which precludes a finding of a double jeopardy violation. Finally, the court found the defendant's due process argument unavailing in light of this court's ruling that no rational jury would have acquitted the defendant. Griffith, 334 Ill. App. 3d at 119.

10

No. 1-09-1001

The defendant timely appeals the denial of his pretrial motion to dismiss the indictment pursuant to Supreme Court Rule 604(f). 210 Ill. 2d R. 604(f).

ANALYSIS

The defendant acknowledges that in Illinois, no precedent exists for applying the double jeopardy bar to circumstances present in the case at bar. "No Illinois case has considered or decided -- one way or the other -- the applicability of Double Jeopardy and Due Process protections in the context of intentional and systematic prosecutorial misconduct like that in Mr. Griffith's case." To support his contention that retrial should be barred under the Illinois Constitution's double jeopardy clause, the defendant proposes we look to the more expansive standards of other states under their respective double jeopardy provisions. In the alternative, he contends dismissal is warranted under the due process provisions of the United States and Illinois Constitutions.

The State counters that the defendant's claims are not novel under Illinois case law, which properly limits the remedy for prosecutorial misconduct to a retrial unless the prosecution intends and causes a mistrial. The State also contends the defendant has no right to advance his due process argument where the sole basis of his pretrial appeal is Supreme Court Rule 604(f) (210 Ill. 2d R. 604(f) ("Appeal by Defendant on Grounds of Former Jeopardy")), which limits interlocutory appeals to

11

No. 1-09-1001

denials of claims of double jeopardy.

Standard of Review

Illinois Supreme Court Rule 341(h)(3) requires an appellant include "a concise statement of the applicable standard of review for each issue [raised]." 210 Ill. 2d R. 341(h)(3). If the appellant fails to set forth the applicable standard of review, the appellee must do so. 210 Ill. 2d R. 341(i). In violation of Rule 341, neither party includes the applicable standard of review on each issue raised. We determine the standard of review without the input of the parties.

"Generally, abuse of discretion is the appropriate standard for reviewing a trial court's ultimate ruling on a motion to dismiss charges on double-jeopardy grounds." People v. Brener, 357 Ill. App. 3d 868, 870, 830 N.E.2d 692 (2005). This is true where the court faces the factual question whether "the prosecutor goaded defendant into moving for a mistrial." People v. Campos, 349 Ill. App. 3d 172, 174, 812 N.E.2d 16 (2004). We review the trial court's decision against the manifest weight of the evidence where "the issue *** is the intent of the prosecutor himself, which is a factual question that the trial court is in the best position to determine." Campos, 349 Ill. App. 3d at 175.

Here, the defendant does not argue that the prosecutor intended to induce the defendant to move for a mistrial, though her conduct triggered numerous unsuccessful requests for a

12

No. 1-09-1001

mistrial. Rather, the parties dispute the legal effect under the Illinois Constitution's double jeopardy provision of the "intentional, systematic, deceptive, and deplorable prosecutorial misconduct," as stated by the defendant, during his jury trial, a characterization consistent with that of the federal and state courts in the published opinions of this case.

In reviewing the denial of a motion to dismiss on double jeopardy grounds where "neither the facts nor the credibility of witnesses is at issue, we address a purely legal question, and our standard of review is de novo." In re Gilberto G.-P., 375 Ill. App. 3d 728, 730, 873 N.E.2d 534 (2007), citing Brener, 357 Ill. App. 3d at 870 (applying de novo review where the only issue is whether the defendant's actions constituted a single act precluding more than one prosecution for double jeopardy purposes). Accordingly, we review de novo the circuit court's dismissal of the defendant's double jeopardy claim.

Double Jeopardy Protection

The double jeopardy clause of the United States Constitution provides: "No person shall *** be twice put in jeopardy of life or limb ***." U.S. Const., amend. V. The Illinois Constitution of 1970 contains a nearly identical provision: "No person shall *** be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10. Section 3-4(a)(3) of the Criminal Code of 1961 codifies the constitutional double jeopardy rules. 720 ILCS 5/3-4 (West 2004).

13

No. 1-09-1001

Though the defendant asserts his claim under both the United States and Illinois Constitutions, he urges this court to broaden the protection under the state double jeopardy clause as have the highest courts of at least five states. This, we take, as an implicit acknowledgment that the federal standard remains as stated in Oregon v. Kennedy, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), which our supreme court has followed in its rulings. "The Supreme Court in Kennedy, specifically rejecting a more generalized standard of 'bad faith conduct' or 'harassment' in judging whether a mistrial was provoked, held that the error must disclose the prosecutor's intent to provoke a motion for a mistrial. We followed this standard of intent in [People v. Davis, 112 Ill. 2d 78, 86, 491 N.E.2d 1163 (1986)]." (Emphasis in original.) People v. Ramirez, 114 Ill. 2d 125, 130, 500 N.E.2d 14 (1986).

To challenge the circuit court's ruling below, the defendant first argues that just because no mistrial was declared, his double jeopardy claim should not be foreclosed. See Sales, 357 Ill. App. 3d at 868 (no cognizable double jeopardy claim based on the granting of a new trial because it is not the functional equivalent of a mistrial). The logic of this argument has been acknowledged by our supreme court:

> "The argument may be made that the
> reversal of a trial court's erroneous denial
> of a motion for a mistrial, which the State

14

has intentionally provoked, deserves the same preclusive effect as if the mistrial had been declared in the first instance." Davis, 112 Ill. 2d at 86, citing Kennedy, 456 U.S. at 687 n.22, 72 L. Ed. 2d at 432 n.22, 102 S. Ct. at 2095-96 n.22) (Stevens, J., concurring, joined by Brennan, Marshall, and Blackmun, JJ.) (it is "irrational" to permit retrial where the prosecution intended to provoke a mistrial that the trial court erroneously failed to declare), quoting Commonwealth v. Potter, 478 Pa. 251, 282, 386 A.2d 918, 933 (1978).

See also United States v. Wallach, 979 F.2d 912, 916 (2d Cir. 1992) ("There is no justification for [the] distinction" between a defendant who moves successfully for a mistrial and one whose conviction is reversed on appeal); State v. Jorgenson, 198 Ariz. 390, 392, 10 P.3d 1177, 1179 (2000) ("Surely a defendant whose mistrial motion was erroneously denied, as in the present case, should have the same constitutional protection as one whose motion was correctly granted ***").

The argument that a reviewing court's decision, that a mistrial was erroneously denied, should have the same preclusive effect was not resolved in Davis because the Davis defendant never moved for a mistrial. Davis, 112 Ill. 2d at 86. The court

No. 1-09-1001

also noted "that the record contains nothing that would support the inference that the prosecutor committed the errors in question with the intent to provoke a motion for a mistrial." Davis, 112 Ill. 2d at 86.

As a foundation for his double jeopardy claim, the defendant before us does not reassert his argument from his direct appeal that the prosecutorial misconduct "would have justified the trial judge's declaring a mistrial" (Ramirez, 114 Ill. 2d at 129), given that he moved repeatedly for a mistrial. In Ramirez, the defendant then argued that had the trial judge declared a mistrial based on the asserted errors, the nature of the errors "were so egregious that it can be inferred that the prosecutor intended to provoke a mistrial." Ramirez, 114 Ill. 2d at 130. To support his contention that the asserted errors were "egregious," the Ramirez defendant pointed to the supreme court's observation "that the prosecutor had 'purposely' " committed one of the asserted errors. Ramirez, 114 Ill. 2d at 131. The supreme court in Ramirez did not reject this argument as contrary to the federal double jeopardy standard requiring the declaration of a mistrial, which the court in Davis had declared as the Illinois standard under the limited lockstep doctrine. Rather, the Ramirez court determined that the error found to be reversible was not sufficiently egregious to give rise to an inference that the prosecutor intended to provoke a mistrial:

> "[T]he reference to the defendant's silence

16

***, which we held to be error, did not even prompt a defense objection, much less a motion for mistrial. 'In view of the failure of both the defense counsel and the trial judge to recognize immediately the need for a mistrial, it is difficult to credit the premise that the prosecutor could not have committed such conduct without knowing and intending that mistrial would result.' " Ramirez, 114 Ill. 2d at 131, quoting United States v. Curtis, 683 F.2d 769, 777 (3d Cir. 1982), cert. denied 459 U.S. 1018, 74 L. Ed. 2d 512, 103 S. Ct. 379 (1982).

Rather than follow the line of argument put forth by the Ramirez defendant (as the argument is foreclosed by Tenner based on our rejection of his mistrial argument on direct review), the defendant before us argues that the reasoning underlying the numerous out-of-state decisions broadening the protection under the double jeopardy clause should apply to his claim based on the egregious prosecutorial misconduct engaged in by the lead prosecutor. He contends the intentional and systematic misconduct undermined the very foundation of a fair trial, which deprived the defendant of his right "to have the charges against him decided by the first trier of fact," a principal aim behind the double jeopardy protection. Ramirez, 114 Ill. 2d at 129;

17

No. 1-09-1001

Kennedy, 456 U.S. at 673, 72 L. Ed. 2d at 423, 102 S. Ct. at 2088 ("one of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury empaneled to try him").  According to this argument, it should not matter that the prosecutor that engages in egregious misconduct had no intent to goad the defendant into seeking a mistrial.  "One of the most persuasive criticisms of the Kennedy rule is that the subjective intentions of the prosecutor are inherently unknowable."  State v. Breit, 1996-NMSC-067, ¶23, 122 N.M. 655, 930 P.2d 792, citing Kennedy, 456 U.S. at 688, 72 L. Ed. 2d at 432-33, 102 S. Ct. at 2096 (Stevens, J., concurring) ("It is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant"); see Commonwealth v. Smith, 532 Pa. 177, 180-81, 615 A.2d 321, 322 (1992), quoting Commonwealth v. Simons, 514 Pa. 10, 23, 522 A.2d 537, 544 (1987) (Flaherty, J. concurring) (" 'Quite the opposite [intent is involved], the intent would be that the defendant should never know how his wrongful conviction came about' ").

Notably, the parties agree that the prosecutor's intent behind the numerous instances of misconduct was not to induce the defendant to seek a mistrial.  While we note the State's assertion in a footnote that it "vigorously disagree[d]" with

18

the federal district court's decision and the decision of the
Illinois Attorney General's office not to appeal the ruling, the
State is no longer free to assert its disagreement over the
severity of its prosecutor's misconduct.  People v. Tenner, 206
Ill. 2d 381, 396-97, 794 N.E.2d 238 (2002) (collateral estoppel
bars relitigation of an issue decided in a prior case, including
the defendant's federal habeas corpus proceedings).

In Smith, the Pennsylvania Supreme Court confronted the
issue of "whether the double jeopardy clause bars retrial
following intentional prosecutorial misconduct designed to
secure a conviction through the concealment of exculpatory
evidence."  Smith, 532 Pa. 177 at 179, 615 A.2d at 323.  The
Pennsylvania Supreme Court determined that the circumstances in
Smith warranted a departure from the federal standard that
double jeopardy attaches only when a mistrial has been
intentionally caused by prosecutorial misconduct.  "We now hold
that the double jeopardy clause of the Pennsylvania Constitution
prohibits retrial of a defendant not only when prosecutorial
misconduct is intended to provoke the defendant into moving for
a mistrial, but also when the conduct of the prosecutor is
intentionally undertaken to prejudice the defendant to the point
of the denial of a fair trial."  Smith, 532 Pa. at 186, 615 A.2d
at 325.

We note that District Judge Bucklo ruled that the
misconduct engaged in by prosecutor Laura Morask pushed the

19

No. 1-09-1001

trial of the defendant in this case to the same point as in Smith:

> "The prosecution's dogged focus on the improper theme of Mr. Griffith's 'propensity to kill with a knife,' [citation], shaped the course of the proceedings and permeated the entire atmosphere of the trial. Such a climate is inherently and fundamentally unfair. 'It is axiomatic in our system of justice that an individual is entitled to a fair trial-not a perfect one. Nevertheless, the distance between the concepts of fair and perfect cannot be so great as to render the former meaningless.' " Griffith, 587 F. Supp. 2d at 914, quoting United States v. Mannie, 509 F.3d 851, 857 (7th Cir. 2007).

The defendant acknowledges that even if his double jeopardy claim had been before the federal district court and Judge Bucklo had been asked to bar the retrial of the defendant based on her finding of a constitutionally unfair trial, retrial could not be barred because the instant case does not fall under the federal standard established by Kennedy as it cannot be contested that the prosecutor's intent here was not to goad the defendant into a seeking a mistrial. Kennedy, 456 U.S. at 676, 72 L. Ed. 2d at 425, 102 S. Ct. at 2089 ("Only where the

20

No. 1-09-1001

governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion").

The defendant correctly notes that states are not bound by the holding in Kennedy, quoting Justice Brennan's concurring opinion: "[N]othing in the holding of the Court today prevents the state courts *** from concluding that *** retrial would violate the provision of the [state] constitution that prohibits double jeopardy ***." Kennedy, 456 U.S. at 680, L. Ed. 2d at 428, 102 S. Ct. at 2091 (Brennan, J., concurring, joined by Marshall, J.). Taking their cue from Justice Brennan, other state courts, including Oregon on remand from Kennedy, have adopted broader rules governing the consequences of prosecutorial misconduct under the state provision providing double jeopardy protection. See State v. Kennedy, 295 Or. 260, 666 P.2d 1316 (1983); Pool v. Superior Court, 139 Ariz. 98, 677 P.2d 261 (1984); Smith, 532 Pa. 177, 615 A.2d 321; State v. Breit, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792; State v. Rogan, 91 Haw. 405, 984 P.2d 1231 (1999). The defendant urges Illinois to join these states.

Unlike the courts that issued the decisions cited by the defendant, we are not the highest court of this state. See People v. Artis, 232 Ill. 2d 156, 164, 902 N.E.2d 677 (2009) ("The appellate court lacks authority to overrule decisions of

21

No. 1-09-1001

this court, which are binding on all lower courts"). Only our supreme court is free to veer away from the federal standard. Compare People v. Pendleton, 75 Ill. App. 3d 580, 593, 394 N.E.2d 580 (1979) (retrial may be precluded for misconduct "motivated by bad faith or undertaken to harass or prejudice the accused"), with People v. Marchbanks, 125 Ill. App. 3d 796, 798-99, 466 N.E.2d 668 (1984) (declining to apply the older Pendleton standard and applying the stricter standard of Kennedy instead).

As a lower court, we are limited to following established case law from our supreme court, though we may find little disagreement with the reasoning of the highest court in our sister state in explaining its departure from the Kennedy standard:

> "We have stated that our State Constitution's double-jeopardy provision 'is subject to the same construction and interpretation as its counterpart in the Fifth Amendment to the United States Constitution. [Citation.] That does not mean, however, that we must embrace United States Supreme Court precedent when it changes a standard formerly adopted by this Court. [Citation.] In [a case departing from United States Supreme Court precedent,] we

22

stated that we will 'undertake independent analysis of our state constitutional guarantees when federal law begins to encroach on the sanctity of those guarantees.' [Citation.] ***

***

*** [W]hen this Court derives an interpretation of New Mexico law from a federal opinion, our decision remains the law of New Mexico even if federal doctrine should later change. [Citation.]" Breit, 1996-NMSC-067, ¶¶25, 27, 122 N.M. 655, 930 P.2d 792.

Though the State argues that the absence of a mistrial precludes a finding of a double jeopardy violation (citing Sales), as we noted, our supreme court has observed that a case may arise that warrants a departure from federal law under the lockstep doctrine. See People v. Caballes, 221 Ill. 2d 282, 299, 851 N.E.2d 26 (2006) ("this court has, on occasion, departed from strict lockstep interpretation when circumstances warrant"). For the same reason that the erroneous denial of a defendant's motion for a mistrial should not necessarily preclude a review of the intent behind the prosecutorial misconduct to trigger double jeopardy protection (Davis, 112 Ill. 2d at 86), the defendant argues that the inability of a

23

defendant to objectively demonstrate an intent to provoke a mistrial behind egregious prosecutorial misconduct should not foreclose the protection afforded by the double jeopardy clause of the Illinois Constitution when egregious prosecutorial misconduct deprives a defendant from obtaining a fair verdict from "the first trier of fact." Ramirez, 114 Ill. 2d at 129.

The defendant contends the circumstances present in his case warrant a departure from the federal standard because the "intentional and systematic misconduct of the prosecutor" (Griffith, 334 Ill. App. 3d at 119), which "called into question the State's commitment to fair and just enforcement of the law" (Griffith, 334 Ill. App. 3d at 119), was so egregious that the State should be barred from a second opportunity to convict the defendant. Just as the circumstances present in each of the decisions issued by the supreme courts of the five states warranted a departure from the federal standard on double jeopardy protection, which we cited above, he argues the circumstances in his case warrant a similar departure by the courts of Illinois.

The State counters that "none of those broader interpretations defendant cites, save two, would provide defendant relief based on the facts of his case." The reasoning behind the majority of the "broader interpretation" cases is grounded in prosecutorial intent to engage in misconduct to avoid an acquittal likely to occur absent the prosecutorial misconduct.

24

No. 1-09-1001

See Wallach, 979 F.2d at 916 ("If any extension of Kennedy beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct").

The defendant replies that the broader double jeopardy standard adopted by New Mexico, Arizona, and Oregon would, if applied, provide relief under the circumstances in his case. At oral argument he urged that Illinois follow the three-prong standard adopted by New Mexico: the double jeopardy bar applies "when [1] improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or motion for a new trial, and [2] if the official knows that the conduct is improper and prejudicial, and [3] if the official intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." Breit, 1996-NMSC-067, ¶32, 122 N.M. 655, 930 P.2d 792.

The State argued at oral argument that the expanded standard based on the "denial of a fair trial" premised on misconduct being so prejudicial as to cause a mistrial or new trial improperly "conflates" interests protected by the due process clause standard and the protection afforded by the double jeopardy clause.

25

No. 1-09-1001

To explain the interests protected by the double jeopardy clause, "[t]he words of Justice Black are often quoted." Breit, 1996-NMSC-067, ¶9, 122 N.M. 655, 930 P.2d 792.

> " 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " Breit, 1996-NMSC-067, ¶9, 122 N.M. 655, 930 P.2d 792, quoting Green v. United States, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957).

The difficulty this case presents is that while the prosecutorial misconduct was "intentional and systematic," as we characterized it on our review on direct appeal, we also concluded that "no rational jury could have found the defendant not guilty of felony murder." Griffith, 334 Ill. App. 3d at 119. In considering the defendant's claim under the double jeopardy clause, we cannot ignore that a new trial protects the

26

No. 1-09-1001

defendant's constitutional right to a fair trial at stake in this case. See People v. Bull, 185 Ill. 2d 179, 214, 705 N.E.2d 824 (1998) ("A *** defendant, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial ***"). We cannot say that under the unique circumstances in this case, any embarrassment, expense, and ordeal imposed on the defendant in a retrial is due to the vast resources and power of the State rather than the overwhelming evidence of the defendant's guilt. Nor can we say that the possibility exists that the defendant may be innocent of felony murder, without meaning to suggest that he cannot be found "not guilty" on retrial. See Green, 355 U.S. at 187-88, 2 L. Ed. 2d at 204, 78 S. Ct. at 223. In other words, we fail to see the interests protected by the double jeopardy clause at stake in this case.

At best, the rights of the defendant to be protected are his due process rights to a fair trial, which a verdict, flowing from a fair trial premised on the lawfully admissible evidence free from any influence of prosecutorial misconduct, will vindicate. See People v. Blue, 189 Ill. 2d 99, 119-20, 724 N.E.2d 920 (2000) (retrial ordered against claim that "conduct of State's prosecutors *** was so improper and abusive that defendant was denied a fair trial" raising doubt of the constitutionality of the defendant's trial).

We are compelled to agree with the State. Regardless of the persuasiveness of the authorities from other states for the

27

rejection of the federal standard in favor of an expanded standard for double jeopardy protection, no cited case leads us to conclude that the interests behind the double jeopardy clause bar a retrial under the circumstances in the defendant's case, even if this were a first-impression question for a second-tier court to decide. See Wallach, 979 F.2d at 916 (defendant's case does not fall under new double jeopardy standard urged by the defendant).

The defendant's observation that "[a]n additional five other states have left open the possibility of a broader standard until presented with a case *** involving appropriate facts that could potentially trigger the broader protections" adds little to his argument that his case, in light of the "evidence at trial overwhelmingly in favor of conviction"  (Griffith, No. 1-03-0713, slip op. at 7), presents a case for such consideration in Illinois.  See United States v. Doyle, 121 F.3d 1078, 1086 (7th Cir. 1997) (" '[I]t is the right to appeal, not the double jeopardy clause, that protects defendants from trial errors .... The double jeopardy clause serves not to punish prosecutorial misconduct; it simply ensures that the defendant, not the government, gets to choose whether to go to verdict' "), quoting Beringer v. Sheahan, 934 F.2d 110, 113 (7th Cir. 1991).  We are unpersuaded that society's interest in punishing "one whose guilt is clear" (United States v. Tateo, 377 U.S. 463, 466, 12 L. Ed. 2d 448, 451, 84 S. Ct. 1587, 1589 (1964)), based on lawfully

admitted evidence at trial, should be forfeited by the egregious misconduct of a rogue prosecutor. Griffith, 334 Ill. App. 3d at 119 ("no rational jury could have found the defendant not guilty of felony murder").

Under the current state of Illinois law, the only relief the defendant can claim, even in the face of a clear showing of egregious prosecutorial misconduct, is that which the federal district court provided: a new trial. See Blue, 189 Ill. 2d at 139 ("regardless of the weight of the evidence, as guardians of constitutional rights and the integrity of the criminal justice system, we must order a new trial when, as here, we conclude the defendant did not receive a fair trial" (where errors created a pervasive pattern of unfair prejudice to defendant's case)).

Due Process

In the alternative, the defendant contends his case should be dismissed on due process grounds. The basis for this interlocutory appeal, however, is Supreme Court Rule 604(f). 210 Ill. 2d R. 604(f). The defendant concedes in his reply brief "that Illinois Supreme Court Rule 604(f) limits the ground for an interlocutory appeal to issues of Double Jeopardy." We cannot accept the defendant's contention that the interest of judicial economy, which forms the basis for his contention that we should address this claim now, should trump express language in Supreme Court Rule 604(f) that grants interlocutory review to only his

double jeopardy claim.  See <u>People ex rel. City of Chicago v. Hollins</u>, 368 Ill. App. 3d 934, 941, 859 N.E.2d 253 (2006) ("The scope of review of an order in a Rule 604(f) appeal is limited to a former jeopardy analysis ***").

CONCLUSION

The opinions of the various courts that have reviewed the defendant's 1999 murder trial have amply demonstrated the egregious misconduct engaged in by the lead prosecutor.  We are bound, however, by precedent of our supreme court that the federal standard under Illinois caselaw requires the prosecutor's intent behind her misconduct be to "goad" the defendant into seeking a mistrial to trigger double jeopardy protection.  As the defendant concedes, no such intent can be objectively established under the facts of this case.  Under well-established precedent, the double jeopardy clause under the Illinois Constitution does not preclude the defendant's retrial.  Nor is his due process claim subject to review in this interlocutory appeal.

We affirm.

CAHILL and MCBRIDE, JJ., concur.

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**THE PEOPLE OF THE STATE OF ILLINOIS,**

    **Plaintiff-Appellee,**

**v.**

**EVAN GRIFFITH,**

    **Defendant-Appellant.**

## No. 1-09-1001

**Appellate Court of Illinois**

**First District, Sixth Division**

**Filed: September 30, 2010**

**JUSTICE GARCIA delivered the opinion of the court.**

**CAHILL and McBRIDE, JJ., concur.**

**Appeal from the Circuit Court of Cook County**

**Honorable John J. Fleming, Judge Presiding**

| For PLAINTIFF-APPELLEE | **Anita Alvarez** |
|---|---|
| | **State's Attorney, County of Cook** |
| | **Alan J. Spellberg** |
| | **Susan R. Schierl Sullivan** |
| | **Marci Jacobs** |
| | **Assistant State's Attorneys, Of Counsel** |
| | **Richard J. Daley Center, Room 309** |
| | **Chicago, IL 60602** |

**For DEFENDANT-**
**APPELLANT**

**Jeffrey D. Colman**

**Justin A. Houppert**

**Jenner & Block LLP**

**353 North Clark St.**

**Chicago, IL 60654**