2022 IL App (3d) 210121

Opinion filed October 11, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0121 Circuit No. 17-CF-389 |
| MASON T. SHANNON, | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Hauptman concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Mason T. Shannon, appeals from the denial of his motion to dismiss, arguing his retrial is barred by double jeopardy.

¶ 2                                   I. BACKGROUND

¶ 3     In September 2017, the defendant was charged by information with involuntary manslaughter (720 ILCS 5/9-3(a) (West 2016)) for recklessly causing the death of Michael Castelli by holding him in a chokehold.

¶ 4                                         A. Trial

¶ 5        The case proceeded to a bench trial in September 2018 with the honorable Judge Chris Ryan presiding. Prior to trial, an attorney for a witness, Jim Clouse, stepped forward and stated that Clouse planned on asserting his fifth amendment right against self-incrimination. Clouse had been served with subpoenas from both the State and the defense. The State announced that it did not plan on calling Clouse as a witness and would not be providing him immunity. Defense counsel stated that the only reason that the State was refusing to grant Clouse immunity was because it was trying to impede the defense from calling Clouse at trial. The defense stated that Clouse gave a proffer statement to the State that was favorable to the defense. The defense then asked that the court allow Clouse to testify as an exception to hearsay. The court denied the request.

¶ 6        The evidence at trial established that Jordan Wilkinson, Joseph Brewer, and the defendant worked together at Bonnie Plant Farms. The defendant also lived on the property. Castelli was a friend of the defendant. Before midnight on July 20, 2017, Wilkinson and Brewer were unloading a truck at the farm, when the defendant and Castelli approached them. Castelli initially acted normally but then began to act strange. The defendant decided to take Castelli home, but Castelli got on his hands and knees and began crawling on the ground and making weird noises. Castelli hit Wilkinson in the back of the head with his fist. The defendant and Brewer sought to restrain Castelli while Wilkinson went to ask Clouse, who also worked at the farm, to assist. They zip tied Castelli's wrists, but he broke free. They called the police, and the defendant placed Castelli in a chokehold for approximately 10 minutes before police arrived. Brewer and Wilkinson testified that Castelli was silent and motionless when the police arrived. La Salle County sheriff's deputy William Norman arrived and ordered the defendant to release Castelli. He placed Castelli in handcuffs and noticed that Castelli did not make any movements, instead slumping over. Norman

removed the handcuffs, called for a medic, and began performing cardiopulmonary resuscitation with the defendant's help.

¶ 7    The State called forensic pathologist Dr. Valerie Arangelovich, who completed the autopsy. She testified that Castelli died as a result of asphyxia due to a physical altercation. She stated that her findings were consistent with a chokehold that places pressure on the carotid artery. A person in such a chokehold would lose consciousness after 20 seconds, and death would occur after constant pressure on the neck for 3 to 6 minutes. She noted in her autopsy that Castelli had an enlarged heart and coronary artery disease, but she did not attribute his death to cardiovascular disease because it did not account for the hemorrhaging she observed or the witness statements. The defense presented the opposing opinion of forensic pathologist Dr. James Filkins, who concluded that Castelli died as a result of heart disease brought on by the stress of the altercation. Dr. Filkins also noted that Castelli had been smoking marijuana and had ingested an unknown quantity of psilocybin mushrooms, which would increase heart rate and cause an individual to act in bizarre ways. The court found the defendant guilty of involuntary manslaughter.

¶ 8                                  B. Posttrial Proceedings

¶ 9    After trial, defense counsel learned that Judge Ryan was married to the court reporter who transcribed the trial proceedings. The defendant moved to substitute judge for cause, arguing that Judge Ryan had a financial stake in the outcome of the case because he earned marital income when a convicted defendant ordered transcripts to pursue a motion for a new trial or an appeal. In December 2018, the defendant filed motions for appointment of a special prosecutor and a new trial or judgment of acquittal based on the due process violation that occurred as a result of Judge Ryan's financial interest, purported prosecutorial misconduct, and "prosecutorial vindictiveness." In September 2019, the defendant filed a motion to dismiss, again based on prosecutorial

3

misconduct and vindictiveness, arguing, *inter alia*, that the State presented false evidence to the grand jury, the State intimidated Clouse into not testifying, and Judge Ryan's wife was permitted to serve as court reporter. Judge Ryan ultimately recused himself, and a new judge was appointed.

¶ 10    After a hearing on the defendant's motions on December 23, 2019, the court stated that a reasonable finder of fact could have found the defendant guilty of involuntary manslaughter. The court denied the motion to dismiss and the motions for acquittal and a special prosecutor. However, based on the potential bias of Judge Ryan, the court granted the motion for a new trial.

¶ 11    In January 2020, the defendant filed another motion to dismiss, alleging retrial was barred by double jeopardy, arguing that the State failed to establish his guilt beyond a reasonable doubt and that Judge Ryan's financial interest constituted judicial overreach that barred a new trial. The defendant supplemented this motion, alleging acts of prosecutorial misconduct and that retrial would amount to a due process violation, as a fair retrial was impossible.

¶ 12    While the motion to dismiss was pending, the State filed a petition for recusal and for appointment of a special prosecutor in June 2020. The petition noted that (1) the State's Attorney had personally taken handwritten notes of a pretrial interview of Clouse, which was not recorded, making her a potential witness at retrial; (2) the State had drafted a portion of Dr. Arangelovich's report, which she had then modified; and (3) the State had failed to disclose to the defense its role in the process, the substance of Dr. Arangelovich's edits, or prior drafts of the report. The court granted the petition and appointed the Attorney General to serve as special prosecutor.

¶ 13    A hearing was held on the defendant's motion to dismiss. The court stated that it would defer ruling on the due process arguments until after the double jeopardy arguments were resolved, as only double jeopardy would be a proper subject for interlocutory appeal. After the hearing, the court took the matter under advisement and issued a written ruling on February 25, 2021. As to

4

the allegation that the evidence in the case was insufficient, the court first found that *People v. Cordero*, 2012 IL App (2d) 101113, was controlling and double jeopardy protections did not apply because the original jeopardy had never terminated based on the timing of the granting of the new trial. The court noted that no caselaw has found that a trial court is required to conduct a sufficiency of the evidence review and that, nonetheless, it had already done so when ruling on the defendant's motion for acquittal. The court then stated:

"As to the second allegation, that judicial overreach bars a retrial on double jeopardy grounds, the defense extensively cites *People v. Pendleton*, 75 Ill. App. 3d 580 (1979). When the 'defendant's request for a mistrial is attributable not to prosecutorial or judicial error, but, rather to prosecutorial or judicial overreaching, retrial is forbidden.' [*Id.*] at 593. *Pendleton*, deals with the actions of the prosecution involved in the case, and not of the judge presiding over the matter. The case does not define what judicial overreach is that would necessitate barring a retrial. In fact, the defense cites no case in which a retrial was denied based upon judicial overreach. In general, *Pendleton* describes overreaching as, 'prosecutorial [or judicial] misconduct: (1) which is specifically designed to provoke a mistrial in order to secure a second and perhaps more favorable opportunity to convict the accused… or (2) which is motivated by bad faith or undertaken to harass or prejudice the accused.' [*Id.*]

The second prong, dealing with bad faith and harassment, is no longer the law in Illinois, nor is it the law in the federal courts. *Oregon v. Kennedy*, [456 U.S. 667, 679 (1982),] held that, 'the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those

cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.' "

The court discussed the defendant's allegation of bias and judicial overreach by Judge Ryan, finding no evidence of bias or judicial overreach. The court then moved on to the defendant's argument regarding prosecutorial overreach, providing a discussion of multiple cases on the topic. The court then stated:

> "With regards to the issue of prosecutorial overreach, based upon Illinois and federal law, the question for double jeopardy purposes is limited to the intent of the prosecutor. If the intent is not to provoke a mistrial, then double jeopardy protections do not apply. In this case, there is no evidence contained in the record that the La Salle County State's Attorney's Office acted with the intent [to] goad the defendant into seeking a mistrial, therefore, double jeopardy protections do not apply."

The defendant filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 604(f) (eff. July 1, 2017).

¶ 14                                             II. ANALYSIS

¶ 15         On appeal, the defendant argues the court erred in denying his motion to dismiss based on double jeopardy, as prosecutorial misconduct would make any retrial unfair.[1] The double jeopardy provisions of both the United States and the Illinois Constitutions protect persons from being twice put in jeopardy for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. "The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same

---

[1]The defendant does not allege that the evidence was insufficient to convict him or that his trial was unfair due to the judicial overreach of Judge Ryan, which he alleged in the lower court, and he has, therefore, forfeited these issues. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

6

offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *People v. Placek*, 184 Ill. 2d 370, 376-77 (1998). We consider *de novo* whether double jeopardy bars retrial. *People v. Gaines*, 2020 IL 125165, ¶ 24; *People v. Weinke*, 2021 IL App (1st) 180270, ¶ 20.

¶ 16     We find that the court did not err in granting the motion to dismiss for two reasons. First, the double jeopardy protection is only triggered if there has been some event that terminates the original jeopardy. *Richardson v. United States*, 468 U.S. 317, 325-26 (1984); *Cordero*, 2012 IL App (2d) 101113, ¶ 3. "If a new trial is granted on the defendant's application, this is, in itself, no bar to a second trial on the same or amended indictment. [Citation.] The defendant cannot, by his own act, avoid the jeopardy on which he stands and then assert it as a bar to subsequent jeopardy." *People v. Woodward*, 394 Ill. 433, 435 (1946). Where, as here, the defendant was convicted and requested a new trial and a new trial was granted, "[r]etrying [the] defendant could not subject him to double jeopardy, because nothing has terminated his original jeopardy." *Cordero*, 2012 IL App (2d) 101113, ¶ 4; see also *Richardson*, 468 U.S. at 325-26 (double jeopardy does not bar a retrial after the first trial ended in a hung jury); *Weinke*, 2021 IL App (1st) 180270 (new trial granted by appellate court reversal did not implicate double jeopardy); *People v. Kotlarchik*, 2022 IL App (2d) 200358 (retrying a defendant when he moved for a new trial did not implicate double jeopardy).

¶ 17     Second, the defendant cites no caselaw in which double jeopardy has been implicated on the facts he describes. The only situation in which prosecutorial misconduct implicates double jeopardy is where the State intentionally provokes a mistrial through deliberate prosecutorial misconduct. See *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982).

"A prosecutor's harassment, overreaching, or bad faith does not suffice. [Citation.] Double jeopardy attaches only when 'the prosecutor's actual intent was to "goad" the defendant into moving for a mistrial,' a rare circumstance. [Citation.] One court described the inquiry as not 'WHAT the prosecutor did, but only WHY he [or she] did it.' " *People v. Bennett*, 2013 IL App (1st) 121168, ¶ 16.

The defendant agrees that he did not move for a mistrial, and he does not contend that the State intentionally goaded him into seeking one. Instead, the defendant asks us to expand this well-established law to the circumstances here, which we will not do. See *People v. Marchbanks*, 125 Ill. App. 3d 796, 798-99 (1984) (refusing to extend this double jeopardy concept where the defendant did not move for a mistrial but instead his motion for a new trial was granted and listing cases for the proposition that "Illinois reviewing courts have similarly rejected extension of this concept of double jeopardy from circumstances where a mistrial has been declared to those in which a defendant has been granted a new trial because of trial error"); see also *People v. Griffith*, 404 Ill. App. 3d 1072 (2010) (refusing to broaden the double jeopardy protections for cases of intentional and systematic prosecutorial misconduct).

¶ 18     In coming to this conclusion, we reject the defendant's reliance on *People v. Pendleton*, 75 Ill. App. 3d 580 (1979). Like the law above (*supra* ¶ 17), *Pendleton* concerns a mistrial, which we do not have here. *Pendleton*, 75 Ill. App. 3d at 590. *Pendleton* was also decided before *Kennedy*, 456 U.S. 667, which now correctly sets the standard in mistrial cases with prosecutorial overreach.

¶ 19     Moreover, we reject the defendant's attempt to apply due process concerns to double jeopardy. The due process clause and the double jeopardy clause provide separate remedies, and we will not amalgamate them. As the trial court noted, the defendant made separate due process arguments, which were not yet ruled on, cannot be the basis of an interlocutory appeal, and are not

8

before us on appeal. His argument that fair retrial is impossible based on the alleged prosecutorial misconduct would be more properly taken in his due process claim.

¶ 20                              III. CONCLUSION

¶ 21        The judgment of the circuit court of La Salle County is affirmed.

¶ 22        Affirmed.