Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/13/2018 08:38 AM CDT

State of Nebraska, appellee, v.
Luis Bedolla, appellant.
___ N.W.2d ___

Filed January 19, 2018.    No. S-16-1031.

1. **Pleadings.** Issues regarding the grant or denial of a plea in bar are questions of law.
2. **Evidence: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
3. **Motions for Mistrial: Pleadings: Prosecuting Attorneys: Intent: Appeal and Error.** While the denial of a plea in bar generally involves a question of law, an appellate court reviews under a clearly erroneous standard a finding concerning the presence or absence of prosecutorial intent to provoke the defendant into moving for a mistrial.
4. **Pleadings: Final Orders: Double Jeopardy: Jurisdiction: Appeal and Error.** An order overruling a plea in bar is a final, appealable order that an appellate court has jurisdiction to review. Such appellate jurisdiction is based on the reasoning that under Neb. Rev. Stat. § 25-1902 (Reissue 2016), a plea in bar is a "special proceeding," and an order overruling a nonfrivolous double jeopardy claim affects a substantial right.
5. **Double Jeopardy: Pleadings.** A plea in bar may be used to raise a double jeopardy challenge to the State's right to retry a defendant following a mistrial.
6. **Motions for Mistrial: Double Jeopardy.** When a mistrial has been declared upon the defendant's motion, the Double Jeopardy Clause generally does not bar retrial except when the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.
7. **Constitutional Law: Double Jeopardy.** The Double Jeopardy Clause of the Nebraska Constitution provides no greater protection than that of the U.S. Constitution.

Appeal from the District Court for Hall County: Teresa K. Luther, Judge. Affirmed.

Jim K. McGough, of McGough Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Luis Bedolla appeals the order of the district court for Hall County which denied his plea in bar to charges of sexual assault of a child. Although Bedolla had moved for a mistrial in the first trial, he contends that a new trial would subject him to double jeopardy because the State had created the need for a mistrial when it moved to amend the information and a jury instruction after the jury had begun deliberations. We conclude that the district court did not err when it denied Bedolla's plea in bar.

## STATEMENT OF FACTS

On August 4, 2015, the State filed an information charging Bedolla with seven counts of various degrees of sexual assault of a child. The offenses involved three different victims and were charged as having occurred on various dates ranging from June 2002 through May 2015. One of the counts was charged as first degree sexual assault of a child, in violation of Neb. Rev. Stat. § 28-319.01 (Reissue 2016). With regard to that charge, the information stated that the victim was a person under 12 years of age identified as "C.Z-M." and that the offense occurred "[o]n or between February 17, 2009 and February 17, 2011."

At Bedolla's trial, C.Z-M., who was born in February 1999, testified that "[o]ver the span of roughly 12 years, [she] was abused by [Bedolla] in a sexual manner" and that the abuse had been occurring "from as young as [she could] remember." She stated that in one of the first incidents she could remember,

Bedolla had "put his hand underneath [her] skirt and underneath [her] underwear and he stuck a finger inside of [her]." When asked how old she was when this incident occurred, she responded, "Maybe before elementary school, so very young." In a second incident that occurred when C.Z-M. "was older . . . maybe in the fifth, sixth grade, so around 10, 11," Bedolla groped her breasts and he "went underneath [her] skirt, but not underneath [her] underwear" and "poke[d] with his hand." In another incident, which occurred at C.Z-M.'s sister's graduation party in May 2011, Bedolla "started grasping [her] breast area and started touching [her]."

C.Z-M. testified that the incidents she described were not the only incidents and that she could not remember all the occurrences, which she described as "a constant thing." When asked again regarding the first incident described above, she stated that it occurred when she was "five or six." She testified that she remembered "three incidents" that occurred when she "was younger than 12" and that they were of "the same nature" as the first incident described above. She testified that one of these incidents occurred when she was "nine or ten" and that Bedolla "slid his hand down [her] pants underneath [her] underwear and he stuck a finger inside of [her]."

On cross-examination, C.Z-M. admitted that in an interview at a child advocacy center, she had stated that Bedolla's abuse of her had begun when she was "[f]our or five" and that it had stopped when she was "seven or eight." When asked whether that was different from her testimony that he had abused her consistently for 12 years, she acknowledged that it was but she testified that the abuse "would stop and start and start and stop" and that she "would call that consistent." On redirect, C.Z-M. testified that in the interview at the child advocacy center, after she stated that the abuse had stopped when she was 7 or 8, she disclosed to the interviewer "at least two more incidents that happened after" that time.

At the jury instruction conference, neither party objected to the court's proposed instruction regarding the crimes charged. With respect to the charge of first degree sexual assault of a

child, the court instructed the jury that the State alleged that Bedolla committed the assault "on or between February 17, 2009, and February 17, 2011." This followed the language of the charge in the information. In its closing argument, the State said that with regard to the charge of first degree sexual assault of a child, it needed to prove to the jury that

> between the dates of February 17, 2009, and February 17, 2011, the defendant, . . . Bedolla, was an individual 19 years of age or older, and that the victim, [C.Z-M.], was a person 12 years of age or younger, and that during that time frame [Bedolla] subjected [C.Z-M.] to sexual penetration.

In the closing argument for the defense, Bedolla's counsel argued that there was "no evidence of any penetration between those dates, '09 and 2011" and that, instead, C.Z-M. had testified regarding penetration that occurred when she was "four or five." He argued that given that C.Z-M. was born in 1999, "these events happened in 2003 or 2004." Bedolla's counsel further noted that C.Z-M. had testified that "it stopped when she was seven or eight," which was before 2009.

After the closing arguments and the instructions noted above, the jury began its deliberations. Approximately 1 hour after it began its deliberations, the jury submitted the following question to the court: "'Is there a reason we're looking at a two-year period only for the sexual assault first degree on a child?'" In response to the jury's question, the court heard arguments from the parties outside the presence of the jury regarding how it should respond to the jury's question. See Neb. Rev. Stat. § 25-1116 (Reissue 2016). The State argued that it should be allowed to amend both the information and the jury instruction to conform to the evidence presented at trial. The State therefore moved to amend both the information and the jury instruction with regard to the timeframe encompassed in the charge of first degree sexual assault of a child "to change the date range that is charged . . . to February 17, 2003, to February 17, 2011." In response, Bedolla argued that there was no precedent for changing the jury instruction

with respect to a particular criminal charge after the case had been submitted to the jury. Bedolla noted that the State had not objected to the instruction that was given, and he argued that "[i]f the shoe were on the other foot" and the defense had asked to amend an instruction after the case had been submitted, "everybody would be saying you waived any objection to that by not objecting to the instruction." He contended that it was untimely to amend a jury instruction, "particularly when the jury points out a problem with it."

The court thereafter sustained the State's motions to amend the information and to amend the jury instruction. The court then called the jury into the courtroom and, over Bedolla's objection, responded to the jury's question by stating: "Jury instruction No. 2 (Elements) has been amended and the jury will be reinstructed on it. The original jury instruction No. 2 should be disregarded." The court then read an amended instruction on first degree sexual assault of a child in which the offense was charged as having occurred "on or between February 17, 2003, and February 17, 2011." The jury was excused to resume deliberations.

After the jury resumed deliberations, Bedolla moved the court for a mistrial based on "the unusual procedure that's been employed here." According to Bedolla's comments, following the court's response to the jury's question, the jury resumed deliberations and soon reached a "quick verdict." Bedolla's counsel asserted that the court's decision to amend the instruction "tells the jury that part, if not all, of my closing arguments should be disregarded without giving me an opportunity to respond." Bedolla argued in support of mistrial that "the appropriate remedy here is to retry the case," and he stated that if the court did not grant a mistrial, he would "follow up immediately after verdict with a motion for new trial." The court sustained Bedolla's motion and declared a mistrial.

Bedolla thereafter filed a plea in bar in which he asserted that "[b]ut for the actions of the State in asking to amend the charge and the given instruction as to Count I, no mistrial would have been granted," and he argued that "continued

prosecution of this matter is a violation of the double jeopardy clauses of both the United States and Nebraska Constitutions."

At a hearing on the plea in bar, Bedolla acknowledged precedent to the effect that "where a mistrial has been granted at the request of the defendant," retrial generally does not violate double jeopardy unless "the State did something to goad the defendant into making that motion for mistrial." Bedolla then stated that he was "not making an argument that the State did anything to goad [him] into requesting a mistrial" and that instead, he was "asking for an expansion" to consider "this very unique situation." He argued that in this case, "[i]t was the State's actions that ultimately led to the grounds for the mistrial" and that therefore, this case was "analogous" to a case in which the State goaded the defendant to move for a mistrial.

In its response, the State emphasized that this case involved a mistrial declared at the defendant's urging and it argued that Bedolla "cannot be first allowed to urge the Court to declare a mistrial" and "then attempt to use the same issue to his advantage later by claiming double jeopardy . . . in a subsequent trial." The State asserted that it "did not seek to amend the information in an attempt to goad [Bedolla] into seeking a mistrial," and it argued that because it did not goad Bedolla, double jeopardy did not bar a subsequent prosecution. At the conclusion of the hearing, the district court denied Bedolla's plea in bar.

Bedolla appeals the denial of his plea in bar.

## ASSIGNMENT OF ERROR

Bedolla claims that the district court erred when it denied his plea in bar.

## STANDARDS OF REVIEW

[1,2] Issues regarding the grant or denial of a plea in bar are questions of law. *State v. Lavalleur, ante* p. 237, 903 N.W.2d 464 (2017). On a question of law, an appellate court reaches a conclusion independent of the court below. *Id.*

[3] While the denial of a plea in bar generally involves a question of law, we review under a clearly erroneous standard a finding concerning the presence or absence of prosecutorial intent to provoke the defendant into moving for a mistrial. *State v. Muhannad*, 290 Neb. 59, 858 N.W.2d 598 (2015).

## ANALYSIS

Bedolla claims that the district court erred when it denied his plea in bar because a new trial would violate double jeopardy. He acknowledges our precedent to the effect that when a defendant moves for a mistrial and a mistrial is declared, double jeopardy does not prohibit a new trial unless the State goaded, or provoked, the defendant into moving for a mistrial. Similar to his argument to the district court, on appeal, Bedolla does not assert that the State goaded him into moving for a mistrial but instead argues that the "exceptional circumstances" of this case require us to extend our precedent to cover other cases wherein the State's actions "prevent a . . . verdict from being rendered." Brief for appellant at 10. We determine that the circumstances of this case do not convince us to extend our jurisprudence, that Bedolla has not shown that the State provoked him into moving for a mistrial, and that double jeopardy does not prevent a new trial.

[4] We note as an initial matter that we have held that an order overruling a plea in bar is a final, appealable order that we have jurisdiction to review. *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017). Such appellate jurisdiction is based on the reasoning that under Neb. Rev. Stat. § 25-1902 (Reissue 2016), a plea in bar is a "special proceeding," and an order overruling a nonfrivolous double jeopardy claim affects a substantial right. *Id*.

[5] A plea in bar may be used to raise a double jeopardy challenge to the State's right to retry a defendant following a mistrial. *State v. Combs, supra*. The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution provides, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The 5th Amendment's

protection against double jeopardy applies to states through the 14th Amendment to the U.S. Constitution. *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). This provision prohibits a criminal defendant from being put in jeopardy twice for the same offense and "unequivocally prohibits a second trial following an acquittal." *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). But when the first trial ends in a mistrial, double jeopardy does not automatically bar a retrial. See, *Arizona v. Washington, supra*; *State v. Combs, supra*.

[6] In cases where a mistrial has been declared at the prosecution's request over a defendant's objection, the defendant may be retried only if the prosecution can demonstrate a "'manifest necessity'" for the mistrial. *Arizona v. Washington*, 434 U.S. at 505. But when a mistrial has been declared upon the defendant's motion, the Double Jeopardy Clause generally does not bar retrial except in circumstances that the U.S. Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), described as a "narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." That narrow exception, pursuant to which double jeopardy bars a retrial, is "limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. at 679.

[7] In this case, Bedolla does not assert that the State provoked or goaded him into moving for a mistrial. Instead, he argues that because of the "exceptional circumstances" of this case, we should expand the "narrow exception" of *Oregon v. Kennedy*. In *State v. Muhannad*, 290 Neb. 59, 858 N.W.2d 598 (2015), we rejected a similar invitation to broaden the "narrow exception" of *Oregon v. Kennedy*. We noted in *State v. Muhannad* that in prior cases, we had consistently held that the Double Jeopardy Clause of the Nebraska Constitution provided no greater protection than that of the U.S. Constitution, and accordingly, we declined to extend the *Oregon v. Kennedy* exception beyond situations where the prosecutor intended that

its conduct would provoke a mistrial. We noted that in *Oregon v. Kennedy*, the U.S. Supreme Court had specifically rejected a more generalized standard of bad faith conduct, harassment, or overreaching as an exception to the defendant's waiver of his or her right to a determination by the first tribunal and had stated that, consequently, "'[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on [the] defendant's motion, . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.'" *State v. Muhannad*, 290 Neb. at 65-66, 858 N.W.2d at 604 (quoting *Oregon v. Kennedy, supra*).

We are aware that after *Oregon v. Kennedy*, some state courts "have adopted broader rules governing the consequences of prosecutorial misconduct under the state [constitutional] provision providing double jeopardy protection." *People v. Griffith*, 404 Ill. App. 3d 1072, 1083, 936 N.E.2d 1174, 1184, 344 Ill. Dec. 417, 427 (2010) (citing cases decided by Supreme Courts of Arizona, Hawaii, New Mexico, Oregon, and Pennsylvania, but declining to expand Illinois' rule beyond that set forth in *Oregon v. Kennedy*). However, as noted above, we have consistently held that the Double Jeopardy Clause of the Nebraska Constitution provides no greater protection than that of the U.S. Constitution, and we are not persuaded in this instance to read our state Constitution as a source to expand the narrow exception under *Oregon v. Kennedy* beyond those circumstances where intent to provoke the defendant to move for a mistrial has been shown.

We read *Oregon v. Kennedy* as characterizing a defendant's decision to move for a mistrial as "the defendant's waiver of his or her right to a determination by the first tribunal." *State v. Muhannad*, 290 Neb. at 65, 858 N.W.2d at 604. We further read the U.S. Supreme Court's analysis in *Oregon v. Kennedy* to the effect that double jeopardy generally does not bar retrial when the defendant moved for a mistrial, as stemming from the fact that the defendant made a knowing decision to pursue mistrial rather than another remedy to correct a perceived

error in the first trial. In this case, when Bedolla moved for a mistrial, he stated that if a mistrial was not granted, he would move for a new trial after the jury's verdict was entered. Having chosen the remedy of a mistrial, Bedolla narrowed the application of double jeopardy to those circumstances set forth in *Oregon v. Kennedy* and this court's precedent. We find nothing regarding the circumstances of this case that would justify straying from the narrow exception set forth in our precedent.

For completeness, we note that Bedolla claims that the district court erred when it sustained the State's motions to amend the information and the jury instruction. However, because Bedolla chose to address these alleged errors by requesting a mistrial, the question whether the court erred in these rulings is not presented to us. Instead, the question before us is the propriety of the district court's denial of Bedolla's plea in bar and, more specifically, whether double jeopardy prevents a new trial following the declaration of a mistrial granted at Bedolla's request. Under the standards set forth in *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), and this court's precedent, the relevant inquiry is whether the State provoked Bedolla to move for a mistrial and not whether the court's rulings that motivated him to pursue a mistrial were correct. We therefore make no comment on whether the district court erred when it sustained the State's motions to amend the information and the jury instruction after the jury had begun deliberations or when it gave the jury an amended instruction in response to the jury's question.

## CONCLUSION

We conclude that double jeopardy does not bar a new trial following Bedolla's successful motion for a mistrial. We therefore affirm the order of the district court which denied Bedolla's plea in bar.

AFFIRMED.

WRIGHT, J., not participating.